(Nos. 20473, 20474.—

THE WESTERN SPRINGS PARK DISTRICT, Appellee, *vs.* HENRY ·F. LAWRENCE, Appellant.—Same Appellee *vs.* HENRY F. LAWRENCE *et al.*—(THE ELMHURST STATE BANK, Appellant.)

*Opinion filed February 18, 1931—Rehearing denied April 10, 1931.*

JOHN R. O'CONNOR, ALBEN F. BATES, and WILLIAM M. WEBSTER, for appellant the Elmhurst State Bank; GEORGE P. FOSTER, for appellant Henry F. Lawrence.

FRANK W. SWETT, for appellee.

Mr. JUSTICE HEARD delivered the opinion of the court:

Appellee, the Western Springs Park District, filed its petition in the circuit court of Cook county for the condemnation of a tract of land for park purposes, making the appellants, Henry F. Lawrence and the Elmhurst State Bank, trustee, and the village of Western Springs and others, parties defendants. Motions by appellants to dismiss were heard and overruled. A jury was impaneled which fixed damages, and a judgment of condemnation was rendered thereon, from which judgment the appellants severally appealed and their appeals have been consolidated in this court.

Appellants' motions were based on the contention that a portion of the lands sought to be taken were described as public streets of the village of Western Springs, and that being subject to a public use they could not be condemned for another such use. The petition, after describing certain lots and blocks, contained the following: "So much of Spring street as shown upon the plat of said Mary J. Sweet's

re-subdivision as lies north of the north line of Elm street as extended west; so much of Burlington avenue as shown on said plat of Mary J. Sweet's re-subdivision as lies between the east and west lines of block 1 in Mary J. Sweet's re-subdivision aforesaid as extended north, all in Cook county, Illinois." The petition also contained the allegation that all the land described in the petition and sought to be taken was private property and gave the names of the persons who claimed to own the same, so far as known.

The land sought to be taken was all platted in September, 1892, and the plat was accepted and approved by the village board. As to the portion of Spring street described in the petition, it was stipulated that it had never been used as a street. The evidence shows that the only use which had ever been made of the portion of Burlington avenue described in the petition was the excavation of earth therefrom for making the embankment upon which the Chicago, Burlington and Quincy railway was built and as a dump-heap for waste material—old bed-springs, automobile bodies, plaster, tin cans and other rubbish. There were large trees over thirty years old growing on the alleged street. The evidence showed it was impassable, and that in order to get to the dump-heap it was necessary to pass over adjoining property platted as lots. The evidence showed that from the time of its platting its use as a street was not possible by reason of its physical conformation.

The making and recording of the plat and its approval by the city council do not constitute an acceptance of it as a conveyance of the public grounds indicated on the plat. It was no more than an offer, which was not binding upon the municipal authorities until acceptance by them. The owner of property cannot, by making a plat of an addition to a city, impose upon the public authorities the burden of caring for the streets and alleys included in his subdivision of the property. The approval of the plat by the city council is evidence tending to show that the plat complies with

the statute and the ordinances of the city, but it is not an acceptance of the streets and passageways shown upon the plat. Notwithstanding such approval the city still has the right to elect what streets upon the plat shall become public highways and public charges upon the municipality for their maintenance. (*Nimpfer* v. *Village of Fox Lake,* 334 Ill. 46; *Hoerrmann* v. *Wabash Railway Co.* 309 id. 524; *People* v. *Massieon,* 279 id. 312; *Russell* v. *Chicago and Milwaukee Electric Railway Co.* 205 id. 155.) The evidence shows that the premises in question were never accepted by the village board as streets. The village was a party to the suit and made no claim to the land as streets and is not here complaining of the court's judgment of condemnation thereof. On the trial appellee claimed that the land belonged to appellants, and it was included in the estimate of the value of the land condemned and appellants' damages were increased thereby. Whether the so-called streets were subject to condemnation, appellants' property was, and they have no cause for complaint in the premises.

Frank W. Swett represented appellee, and George P. Foster, while technically only representing appellant Lawrence, in fact throughout the entire trial represented both appellants and was the only person who examined and cross-examined the witnesses and made the arguments to the jury for both appellants. Of the premises sought to be condemned, a narrow strip containing .112 of an acre belonged to some Sweet heirs who are not complaining of the judgment, and the remainder, including the so-called streets and called on the trial "the larger tract," contained 12.169 acres. Before argument to the jury was commenced the court stated that it was customary to submit a form of verdict and inquired of counsel if they had checked it over. Swett then handed the typewritten form of verdict later used, to counsel for appellants, who were told by the court to "check it over." Counsel for appellants then examined the form of verdict, after which Foster handed it to the court, stat-

ing, "We have no objection." This form contained no reference to the so-called streets. After the arguments to the jury were concluded the following took place:

The court: "Counsel on each side, I am confused about this verdict. Will you please step forward? I think the jury will be confused, too. I notice there are two separate parcels here. The jury will be obliged to divide their verdict, I take it, on the matter of ownership. I tell you what I had better do, if it is agreeable to both of you: Take a red pencil and mark that tract so the jury differentiates on the map—so the jury will know what it is all about.

Mr. Swett: "The testimony on that 12-foot strip was that it was the same acreage value.

The court: "Just a minute. Take a red pencil and mark that part there—mark it 'No. 2.' Then on the verdict we will—

Mr. Swett: "If the court please, it is .112 of an acre in lot 'A.' I think if we mark it any more—it is referred to all through the case as .112 of an acre, lot 'A.' Whatever you say we will do.

The court: "Well, I thought it would be a good idea to mark that with a red pencil or a pencil of some sort. Mark it 'No. 2,' and the rest of the property will be 'No. 1.' Then I will mark it in the verdict the same way. I will mark it 'No. 1' and I will mark this little special strip of property 'No. 2.' Otherwise the jury might be confused in this long trial and fill in the wrong blanks and we would have all this work to do over again. We don't want to do that. Make it as clear as possible.

Mr. Swett: "Is exhibit 'A' here?

"(Mr. Foster picks up from the table a blue-print which is a duplicate of petitioner's exhibit 'A.')

Mr. Swett: "That is one of those the jurors had.

"(Two copies of the blue-print, petitioner's exhibit 'A,' were by stipulation used by the jury throughout the trial for reference.)

The court: "Use any kind of a pencil—a blue pencil. Take this blue pencil.

Mr. Swett: "Have that plat marked exhibit 'A.'

"Whereupon said plat was handed to respondents' reporter by Mr. Foster and marked 'Defs. A' and received in evidence to be used for reference by the jury. No. 1 as marked on this plat included the so-called streets. After instructing the jury as to the law the court read the form of verdict to the jury and stated:

"Now here, gentlemen, when you come to that place at the top of the second page in this verdict you will find I have marked a '1' right beside it. [The court shows form of verdict to the jury.] That '1' means all of the property in this lawsuit except the little strip which is called to your attention by the figure '2.' It is within the white line. It is called lot 'A.' It is just this little fraction of an acre down here; see? [Pointing to Def.'s exhibit 'A.'] Now, when you come to '1' in the verdict put in the full cash market value of all the property, with the exception of that little strip, which you have to value separately. Now, do you all understand that, so that when you come to this first place in the verdict marked '1' you put in the value of the whole property with the exception of that little strip which is called lot 'A?' "

The jury then retired to their jury room, taking with them the plat upon which the tracts were marked in pencil with the figures "1" and "2," with directions, by agreement of all parties, that if a verdict was reached the jury might sign and seal the same and deliver it to the clerk and separate until the next morning. The next morning, the jury having the night before placed their sealed verdict, which was on the marked form given them by the court, with the clerk of the court, the clerk was directed by the court to open the same and to read only that part which stated the amounts awarded as compensation, omitting the descriptions, and no objection being made thereto the same

was done as follows: "For the whole tract (except the small strip), $18,787.75. For the small strip, $38.32." The jurors were then discharged and went to their respective jury rooms. During the day it was discovered that the verdict was defective in not including the detailed description of the so-called streets. Swett made a motion to correct the verdict so as to include such description. The following morning Swett, representing appellee, and Foster and W. M. Webster, the latter the attorney of record for the Elmhurst State Bank but who had said nothing during the trial, were present, and the court having summoned from the jury room and elsewhere the several persons who had composed the jury in this proceeding, and they being present, the following occurred:

By the court: "It seems, gentlemen, that the verdict through an inadvertence has left out two of the most necessary things, the two very necessary pieces of property had not been incorporated in the verdict, and so I am going to ask you to sign your verdict over again. The description he left out—I will read it to you—he left this out—it wasn't in the verdict when you retired to deliberate on the case. This is the new verdict. It is exactly the same as the other one with the exception of the part— I am going to read this addition to you before you sign the verdict. At the top of the second page, 'Also so much of Spring street as is shown upon the plat of said Mary J. Sweet's re-subdivision as lies north of the north line of Elm street as extended westerly, and so much, and also so much of Burlington avenue as is shown on said plat of Mary J. Sweet's re-subdivision as lies between the east and west lines of block one (1) in Mary J. Sweet's re-subdivision aforesaid as extended north.' That is the change in the amended verdict, and I will ask you to please—

Mr. Foster: "It is the assumption that the jury understood those pieces were in the verdict as originally signed.

The court: "You so understood that, didn't you, gentlemen?

The jurors: "Yes, your honor.

The court: "If you will fill in the amount, Mr. Foster, I will let the jury sign this verdict over again.

The jurors: "Shall we take it in the back?

The court: "No; just use the reporter's desk.

Mr. Webster: "At this time I suppose you will allow me to make my objection to this?

The court: "To the actions of the court in directing the jury to sign the amended verdict you object?

Mr. Webster: "Yes.

The court: "Have you a reporter here?

Mr. Webster: "Yes.

The court: "The court overrules your objection, and you may take an exception to the court's ruling.

Mr. Webster: "All right; I will take an exception. (To which action of the court the respondent, Elmhurst State Bank, then and there duly excepted.)

The court: "Mr. Foster agrees that the jury shall sign the amended verdict and to the entry of the order but without prejudice to the questions raised—that is, without prejudice to his right to maintain that a contract of the park— that the alleged streets in question were real streets and the particular park board had no right to condemn the property of the village of Western Springs.

Mr. Foster: "I don't imagine the order in which the verdict is signed makes any difference—whether they ought to sign their names in the same order.

The court: "I do not think so.

The court: "The lawyer who made the objection did not say anything during the trial and I did not have his name. We can fill this in."

And thereupon the verdict as amended was signed, received and placed with the clerk. Motions for a new trial

and in arrest of judgment were overruled and judgments of condemnation entered for the entire tracts.

It is contended by appellants that the court erred in amending, or causing to be amended, the verdict of the jury so as to include property not described in the original verdict, and that the court, after the verdict had been announced and the jury discharged, had no right to recall it and direct a different verdict.

In justice to Foster we quote from appellants' reply brief: "Before replying to the brief of appellee, Mr. George P. Foster, counsel for appellant Henry F. Lawrence, desires to withdraw from the consideration of this court, as to Henry F. Lawrence, all assignments of error, and argument in support thereof, based upon the amendment of the verdict."

In the view which we take of this case we do not feel called upon to decide the questions raised by the objection of Webster to the amendment of the verdict. A verdict is not to be construed with the same strictness as an indictment but is to be liberally construed, and all reasonable intendments will be indulged in its support and it will not be held insufficient unless, from necessity, there is doubt as to its meaning. (*People* v. *Lee,* 237 Ill. 272.) The rule is, that in determining the sufficiency of a verdict, and the judgment based thereon, the entire record will be searched and all parts of the record interpreted together, and a deficiency at one place may be cured by what appears at another. (*People* v. *Tierney,* 250 Ill. 515; *People* v. *Murphy,* 188 id. 144.) A verdict may be amended by the court or construed by reference to the pleadings and the evidence in the record, and in some instances from the notes of the judge, when the intention of the jury is apparent from the pleadings and the evidence. In considering the verdict itself with a view to its sufficiency the first object is to ascertain what the jury intended to find, and this is to be done by construing the verdict liberally, with the sole view of as-

certaining the meaning of the jury and not under the technical rules of construction which are applicable to pleadings. If the meaning of the jury can be ascertained and a verdict on the point in issue can be made out the court will mold it into form and make it serve. (*Law* v. *Sanitary District,* 197 Ill. 523.) By consent of all parties the figure "1" was placed on the form of verdict to be used by the jury to represent the entire larger tract, including the omitted property, and when, under these circumstances, the jury fixed the value thereof at $18,787.75 that would have been a sufficient finding of the value of the entire tract, including the omitted property, even if no description of the tract had been given in the form of verdict which had been so marked and given them for their use, other than the figure "1." In any event, appellants are not in a position to claim any advantage from the action of the court in this regard. Foster, who alone, as far as the actual court trial was concerned, represented appellants, consented to the oral instruction of the jury, to the marking of the figure "1" upon the form of verdict to be used by the jury, to the court's explanation to the jury that the figure "1" represented the entire tract sought to be condemned except the smaller tract marked "2," to the manner in which the verdict was read in court and to its subsequent amendment by the court. Even if there was error committed, a party can not complain of an error which he induced the court to make or to which he consented. *People* v. *Clements,* 316 Ill. 282; *McKinnie* v. *Lane,* 230 id. 544; *Glos* v. *Murphy,* 225 id. 58; *Conness* v. *Indiana, Illinois and Iowa Railroad Co.* 193 id. 464; *Oliver* v. *Oliver,* 179 id. 9; *Smith* v. *Kimball,* 128 id. 583; 2 R. C. L. 238.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*