Joseph Baumgartner and George Baumgartner, Appellants, v. William Montavon and Edward Montavon, Appellees.

Gen. No. 8,778.

Opinion filed August 24, 1934.

ARCHIE G. KENNEDY, for appellants.

HAROLD E. MANN, for appellees.

MR. JUSTICE DOVE delivered the opinion of the court.

This is a distress for rent proceeding brought by the appellants Joseph Baumgartner and George Baumgartner against the appellees William Montavon and Edward Montavon for a balance of $715 rent claimed to be due and unpaid.

The evidence discloses that on February 15, 1927, the parties hereto entered into a written lease by the provisions of which appellants leased to appellees their farm of 246 acres in DeKalb county for a period

of five years from March 1, 1927, until March 1, 1932, for an annual cash rental of $2,500, of which amount $500 was payable on March 1st, $1,000 on October 1st, and $1,000 on February 1st, of each rental year. The lease further provided that appellants would keep the well and water system in good repair and that the appellees would use due care to keep the water system in good condition. Appellees entered into possession of the demised premises, under the lease, and paid the rent until the instalment due February 1, 1932, when there was a balance due and unpaid of $715. On February 2, 1932, the appellants demanded the balance of the rent due from appellee, William Montavon. Concerning what occurred between the parties at the time, the evidence is conflicting. Appellants testified that appellee William Montavon offered them a crib containing about 1,470 bushels of corn worth 22 cents a bushel in satisfaction of the rent, but that they refused to accept it in full payment of the rent due, but did offer to accept it at its market value and credit the value thereof upon the rent. Appellees refused this offer and no agreement was ever made concerning it and this crib of corn was, with other personal property, levied upon under the distress warrant, but subsequently released, appellees having executed a forthcoming bond as provided by section 26 of the Landlord and Tenant Act, Cahill's Illinois Revised Statutes, 1933, ch. 80, ¶ 26, and subsequently the corn was sold by appellees to other parties. In defense of this action, appellees plead the general issue with notice of several items of recoupment or set-off. In this notice appellees insisted that they had sustained damages to the extent of at least $2,000 by reason of appellants' failure to keep the well and water system in repair, stating that in the fall of 1927, appellants caused the water to be shut off from the barn, to the damage of appellees of $900, and that in the year 1929, appellees

caused the water to be shut off from the house, to appellees' damage of $300. The notice further stated that appellees would, upon the trial, insist that appellants represented that all the land was tillable and not subject to overflow, whereas in fact appellees lost from five to ten acres of crops from overflow each year. In their notice of set-off, it was also insisted by appellees that appellants were indebted to them for making certain repairs upon the premises, enumerating the repairing of tile, filling a ditch to the amount of $150, hauling 25 loads of cinders for the driveway, $150, and painting and papering the house, $25. It was also insisted that appellants represented the farm as practically free from quack grass, Canada thistles and other foul weeds, whereas after appellees had farmed it they found it was infested with such weeds, by reason of which they sustained damages in the form of loss of crops and labor in exterminating these weeds to the amount of $200. Issue was joined upon the plea of the general issue, and a trial had, resulting in the jury returning the following verdict, viz.: ''We, the jury find the issues joined in favor of defendants and assess defendants' damages at Five Hundred Dollars ($500.00) and crib of corn to be turned over to plaintiffs.'' The trial court denied appellants' motion for a new trial and rendered judgment against appellants for $500, disregarding the other portion of the verdict and from this judgment the record is before us for review upon appeal.

Upon the trial, the court, after admitting evidence concerning conversations detailed by appellees as to statements made by appellants with reference to Canada thistles, quack grass and noxious weeds, struck not only that evidence, but also all evidence from the record concerning Canada thistles, quack grass and noxious weeds, and withdrew from the consideration of the jury any evidence given as to repair work on

the tile, hauling of cinders, Canada thistles and quack grass. There was no evidence offered by appellees to sustain their notice in so far as they claimed damages by reason of their filling ditches, painting and papering, so that the alleged false representations as to the land being tillable and not subject to overflow and the alleged breach of the covenant in the lease upon the part of appellants to keep the well and water system in repair are the only matters in the record upon which the jury could have based their verdict.

It is first contended by appellants that it was error for the trial court to permit the introduction of evidence relating to what was said and done by the parties in regard to leasing the premises prior to the execution of the lease which was under seal. The appellee William Montavon was permitted to testify that appellant, Joseph Baumgartner, took the appellees to the premises the day before the lease was signed and showed them the farm; that there was snow on the ground at the time and that Baumgartner told appellees that "every foot of his land was work land," and that the overflow land drained out. He was further permitted to testify, over objection, that there was a loss of crops of from five to ten acres each year, caused by overflow. Other witnesses also testified as to the damage to crops from the overflow. Appellees contend that the above representations of Joseph Baumgartner were false, that they relied upon them to their damage and that they are entitled to recoup or offset their damages in this proceeding to the extent the evidence shows they were damaged, the same as if they had instituted an independent action for fraud and deceit. Appellants invoke the well known rule that preliminary negotiations and conversations between the parties prior to the execution of a written instrument are inadmissible in a suit on such instrument, as it is conclusively presumed that the whole engagement of the

parties and the extent and manner of their undertaking are merged in the written instrument.

In *Kingman v. Draper,* 14 Ill. App. 577, the court says: "Set-off has application only to actions brought on contract, and is a cross-debt, a counter demand or claim, originating in contract, which the defendant holds against the plaintiff, and it most usually arises out of a transaction extrinsic to that involved in the plaintiff's cause of action. . . . The defendant stands in the attitude of a plaintiff in a cross-action and both the original action and the cross-action are *ex contractu.* Recoupment proceeds upon another principle, and is a mere right to reduce or defeat the plaintiff's demand, on account of some matter connected with the transaction upon which the suit is brought. The recoupment may be to the full extent of the plaintiff's damages, but the defendant cannot recover any excess of damages. A claim originating in contract may be set up against one founded in tort; and damages for a tort may be set up against a suit on a contract."

In the early case of *Stow v. Yarwood,* 14 Ill. 424, which was an action in trover for wrongfully taking and converting a steam engine, the defendant was allowed to recoup the amount of work which he had done for the plaintiff in repairing the engine.

In *Engstrom v. Olson,* 248 Ill. App. 480, this court, after commenting upon the many authorities referred to in the opinion, states: "From the review of the foregoing authorities, it follows: (1) that a set-off can only be allowed where the original cause of action is based on a contract, express or implied, and the set-off sought to be made must be on a contract, express or implied; (2) that in a suit based on a contract, express or implied, damages, either liquidated or unliquidated, growing out of the same transaction, may

be recouped; and (3) in a tort action, there can be neither a set-off nor a recoupment.''

In *Burroughs v. Clancey,* 53 Ill. 30, it was held that damages, arising by reason of false and fraudulent representations made by plaintiff to defendant with reference to the leased premises having a good drain sufficient to carry off the waste water, could be recouped in an action of covenant to recover rent under the provisions of a lease.

In *Stubblefield v. Soule,* 21 Ill. App. 154, which was an action brought to recover damages for breach of the covenants of a lease, the court held that evidence tending to prove that the plaintiff represented to the defendant before the lease was executed that the roof of the dwelling was in good condition when in fact it was not, that defendant knew it was not and that on account thereof defendant's furniture was damaged, was competent, as such damages could be recouped in that action.

In *Streeter v. Streeter,* 43 Ill. 155, it was held that damages for a tort, in relation to the same subject matter on which the suit on the contract is brought, may be recouped.

In many of the cases, the terms set-off and recoupment are confused. Set-off permits a defendant not only to defeat the plaintiff's demand, but recover, in addition, a judgment against the plaintiff. Recoupment permits no recovery by the plaintiff against the defendant; it only goes to the right of reducing or defeating plaintiff's claim. In the instant case, appellants' action is for rent due, and is an action *ex contractu.* Appellees' notice, under their plea of the general issue, discloses that they seek to defeat appellants' claim and recover from them because of appellants' false representations. Appellees' claim or demand therefore is for an unliquidated amount, because it is one which one of the parties alone cannot render

certain. *Duncan Lumber Co. v. Leonard Lumber Co.*, 332 Ill. 104. An unliquidated claim for damages growing out of a tort cannot be set off in an action *ex contractu*. *Twenty-five Fifth Ave. Corp. v. Roach*, 248 Ill. App. 126. While appellees' damages for alleged false representations could not be offset against appellants' suit for rent, it could be, inasmuch as it arose out of the same transaction, insisted upon by appellees by way of recoupment, and in our opinion this evidence of false representations was admissible as such damages could be recouped from the rent in this action. And to so hold in no way conflicts with those authorities which hold that the provisions of a written instrument cannot be varied by parol evidence.

In their notice of special defenses, appellees also insisted that they had sustained damages by reason of appellants' failure to keep the well and water system in good repair, as they had obligated themselves to do by their lease. Upon this point there was a sharp conflict in the evidence. Appellees testified that appellants permitted the water system to become out of repair and refused to repair the same after repeated notices to that effect. Appellants testified that they kept the water system in repair; that appellees did not give repeated notices of its being out of repair and that when notified the water system was repaired. It is the law that damages sustained by a tenant by reason of a breach of the covenants of the lease on the part of the landlord may be set up by way of recoupment in an action for rent, under the lease. In *Rubens v. Hill*, 213 Ill. 523, which was an action in assumpsit to recover rent, the court said: "Upon the assumption, however, that appellee was obliged to make repairs after the beginning of the term, appellant's first ground of defense is that the house was leaky, that the water came in through the roof, and around the windows, during the rains in the summer of 1902, and that the

basement was not properly drained, so that the house was damp. It is also claimed that these conditions could have been obviated by making certain repairs during the running of the lease. . . . Appellant refused to pay any rent after the 19th of May, 1902, and some conversation took place between him and appellee and her agents, and some letters passed between them, in reference to the making of certain repairs insisted upon by appellant. There was a conflict in the testimony as to the extent of the dampness and the leaks, and the absence of proper drainage, and also as to the alleged decay of certain portions of the porch around the dwelling. This was a matter for the consideration of the jury, and the jury have determined it against appellant. The court properly instructed the jury that, if they should believe from the evidence that any wrongful act of the appellee or omission to perform anything, required of her by her lease, was such as tended merely to diminish the beneficial enjoyment of the premises leased by the appellant, he was still bound for the rent if he continued to occupy the same, and that, if the appellant did not abandon the leased premises, his obligation to pay the rent therefor remained, but that he might show, as a matter of defense in what manner such beneficial enjoyment of the premises was diminished by such act or omission to act of the plaintiff, and recoup from the rent such damages, if any, he may have shown by the evidence he had sustained by reason of the wrongful act or omission to act of the plaintiff. Such is the law as has been declared by this court. (*Chicago Legal News Co. v. Browne,* 103 Ill. 317; *Barrett v. Boddie,* 158 id. 479; *Keating v. Springer,* 146 id. 481.)''

Appellees' claim for damages for breach of appellants' covenant to keep the water system in good repair was, therefore, a proper matter in recoupment to mitigate the amount of rent claimed by appellants to

be due, but could not be made the basis of a judgment in favor of appellees for damages in excess of the appellants' claim for rent. *Truman v. Reiss,* 175 Ill. App. 351.

Appellees cite and rely on the case of *Selz v. Stafford,* 284 Ill. 610, in support of their contention that the jury were warranted in returning the verdict they did and that the judgment rendered thereon ought to be sustained. There is nothing said in that case which conflicts with the holdings in the other cases herein cited. The *Selz* case was an action brought in the municipal court of Chicago to recover rent. The defendant filed an amended affidavit of merits in recoupment, setting up several claims for damages growing · out of the failure of the lessor to comply with the terms and provisions of the lease. In holding that the affidavit of merits stated a good defense in recoupment to the plaintiff's claim for rent, the Supreme Court said: ''The law applicable to this case is well settled. In an action for rent under a lease, damages sustained by the tenant by reason of a breach of the contract of leasing on the part of the landlord may be set up by the tenant by way of recoupment and deducted from the sum he owes as rent. (*Lindley v. Miller,* 67 Ill. 244; *Lunn v. Gage,* 37 id. 19; *Rubens v. Hill,* 213 id. 523.) Where premises are leased for a hotel and the landlord permits in the same building another business to be carried on that is well known by him to be hurtful to the business of a hotel and has the same carried on contrary to the protests of his tenant, whether such business be the saloon business or any other business, in the absence of permission to carry on such business by the terms of the lease, or otherwise, the landlord will be liable to the tenant for any damages so caused the tenant, by recoupment, when sued for rent. (*Wade v. Halligan,* 16 Ill. 507.) Any acts of trespass of the landlord or other acts

which are unwarranted or negligently performed and occasion damage to the tenant in respect to the premises leased may be recouped by the tenant in an action for rent. (*Lynch v. Baldwin,* 69 Ill. 210; *Keating v. Springer,* 146 id. 481.) The tenant may also recoup in such an action his damages for a partial eviction of the premises or for any acts that amount to an eviction of a part of the premises. (*Halligan v. Wade,* 21 Ill. 470.) It is at all times to be understood, however, that no wrongful act of the landlord debars him from a recovery of the rent for the premises if the tenant continues to occupy the premises. In such a case the tenant can only recoup such damage as he sustained from the unlawful acts of the landlord which cause damage to the tenant in respect to the premises leased. He may recoup for a partial eviction of the premises, but he cannot successfully claim an eviction as to the whole of the premises so long as he remains in possession of the same. (*Chicago Legal News Co. v. Browne,* 103 Ill. 317; *Rubens v. Hill, supra.*) It is well settled that a claim originating in contract may be set off against one founded in tort if the counter-claim arises out of the same subject matter on which suit on the contract is brought and both are susceptible of adjustment in one action. (*Burroughs v. Clancey,* 53 Ill. 30.) The tenant has his option to resort to his remedy by recoupment when sued for rent or he may maintain an independent action. If he resorts to recoupment, the rule in that case is that he can only recoup to the extent of the amount claimed for rent but cannot have judgment for any excess that his damages may exceed the rent due.'' In our opinion the notice of special defenses were notices of matters in recoupment only and not of set-off and that even if appellees had substantiated this defense by the quantum and character of evidence which could have had our approval, the jury would only have been warranted in

finding the issues for them, and it was improper for the trial court to have submitted to the jury a form of verdict authorizing any recovery by appellees.

The verdict returned by the jury found the issues in favor of appellees, assessed their damages at $500 and directed the "crib of corn to be turned over to plaintiffs." Appellees, while conceding that the verdict is irregular, insists that this court should not reverse because of that fact, and calls our attention to the fact that the trial court had full control of the verdict and that it was entirely proper for it to disregard any surplusage added to the money verdict and render judgment for the amount of damages only. In support of their contention, appellees cite *O'Brien v. Palmer,* 49 Ill. 72; *Parker v. Fisher, Fuller & Co.,* 39 Ill. 164, and *Independent Order of Mutual Aid v. Stahl,* 64 Ill. App. 314. In *Parker v. Fisher, Fuller & Co., supra,* the verdict returned was: "We, the jury, find a verdict for the plaintiffs for the sum of one thousand dollars and interest." The lower court allowed a remittitur of all of said verdict except $1,000 and rendered judgment against the defendants for $1,000 and the Supreme Court approved the action of the trial court. In the case of *Independent Order of Mutual Aid v. Stahl, supra,* the verdict returned was for $2,008.75. The Appellate Court treated a motion of the plaintiff made in the trial court to resubmit the case to the jury with an instruction to return a verdict for $2,000 as equivalent to a remittitur and affirmed the judgment of the trial court in rendering judgment for $2,000. In *O'Brien v. Palmer, supra,* the verdict was: "We find the issues for the plaintiff, and assess his damages at $4,396.65; and we find that the plaintiff is entitled to the possession of the five certain promissory notes in the proceedings mentioned and produced upon the trial by the defendant." It was held that the court properly rendered judgment upon the

verdict for the money part thereof and rejected the last clause as surplusage. It is true that the trial court has control over the verdict of the jury and may put it in form, when the change is a matter of form only. *Osgood v. McConnell,* 32 Ill. 74. But no case has been cited which would permit a trial court to change the verdict in a matter of substance. In the case of *O'Brien v. Palmer, supra,* the entire verdict was in favor of the plaintiff. The same thing occurred in *Parker v. Fisher, Fuller & Co., supra,* where the court said: "What rule is there to prevent a party from waiving a portion of the finding of a jury? Why should the defendant complain? It is to his advantage that a verdict was entered for less than the amount really due." The same reasoning, however, could not apply to the verdict in the instant case, because the money part of the verdict was in favor of the appellees and the part relative to the crib of corn in favor of the appellants. In the recent case of *Western Springs Park Dist. v. Lawrence,* 343 Ill. 302, the court said: "In considering the verdict itself with a view to its sufficiency, the first object is to ascertain what the jury intended to find, and this is to be done by construing the verdict liberally, with the sole view of ascertaining the meaning of the jury and not under the technical rules of construction which are applicable to pleadings. If the meaning of the jury can be ascertained and a verdict on the point in issue can be made out, the court will mold it into form and make it serve." Applying this rule to this case, the only liberal construction to be placed upon the verdict is that the jury intended to assess appellees' damages at $500 and to find that appellants are entitled to the crib of corn levied upon in the distress warrant. Such being the intention of the jury, how could the trial court mold it into form and make it serve? It could not render a conditional money judgment in favor of appellees,

the condition being that appellees turn over to appellants a crib of corn. The verdict as found is double and so insufficient that a judgment cannot be rendered upon it.

Other errors have been assigned, which, in view of what we have said, are not likely to occur upon a retrial of this case, and therefore it is unnecessary to pass upon them.

In conclusion, we hold that appellees' notice of special matters of defense to the effect that they sustained damages by reason of appellants' representations as to the drainage of the farm and their consequent loss of crops, and that they sustained damages by reason of appellants' failure to repair the water system, are to be treated as matters pleaded in recoupment, and not set-off, and that in recoupment a judgment cannot be rendered for any excess above the landlord's claim for rent and therefore the verdict and judgment in favor of appellees for $500 was contrary to law; furthermore, the verdict returned by the jury was not responsive to the issues joined, and it was error to render judgment thereon.

We might add that the evidence discloses that appellees, for several years before they moved upon appellants' farm, lived nearby and before they entered into the written lease they went upon the farm and observed the topography of the land. Their testimony not only as to the representations made by appellants with reference to the overflow, but also their complaints as to the water system are flatly contradicted by appellants. Appellees continued to occupy the premises until the termination of the lease and had paid a portion of the final instalment of the cash rent before it became due. We have considered all the evidence in this record and that upon which appellees' claim for recoupment rests is neither satisfactory nor convincing. It is true that two juries have passed

upon the facts in this case, and sustained the contentions of appellees, but the finding of the first jury did not receive the approval of the trial court.

The judgment of the circuit court of DeKalb county is reversed and the cause remanded.

*Reversed and remanded.*