Luther B. Adams and Lillie Adams, Plaintiffs-Appellants, v. Rubye E. Blazier Grace, Harvey Louis Blazier, and William Grace, Defendants-Appellees.

Gen. No. 69–94.

Fifth District.

August 7, 1970.

Kern & Pearce, of Carmi, for appellants.

Deneen A. Watson, of Harrisburg, for appellees.

MORAN, PRESIDING JUSTICE.

Plaintiffs-counterdefendants appeal from an order of the Circuit Court of Gallatin County denying their motion to vacate a default judgment entered against them on defendant-counterplaintiffs' counterclaim and dismissing their complaint.

Appellants, Luther B. Adams and Lillie Adams, filed their complaint on August 31, 1968, to enforce a contract for the sale of certain property entered into between Rubye E. Blazier Grace as vendor and appellants as vendees. The complaint alleged that Rubye Blazier Grace is the holder of record title to Lots 444 through 455 in New Haven, Illinois, by virtue of a warranty deed executed by John and Nola Duley on August 11, 1966; that on August 11, 1966, Rubye Blazier Grace and Harvey Louis Blazier were husband and wife; that on April 25, 1968, appellants entered into a written contract with Rubye E. Blazier for the purchase of the described property for the sum of $1,000, $150 due on execution and the balance of $850 due on or before March 1, 1970; that appellants as purchasers under the contract entered into possession of the premises and paid the taxes thereon; that on or about August 14, 1968, Rubye Blazier procured a divorce from Harvey Louis Blazier and the divorce decree provided, in part, that the parties agreed to sell the described property then held in the name of Rubye Blazier and divide the net proceeds equally; that since the divorce decree Rubye Blazier has united in marriage with William Grace and that Rubye Blazier and Rubye Blazier Grace is one and the same person; that appellees have attempted to declare the purchase contract invalid and that appellants are ready, able and willing to complete their obligation under the contract.

On September 25, 1968, appellees, Rubye E. Blazier Grace, Harvey Louis Blazier and William Grace, filed an answer and counterclaim alleging that on October 13,

71

1962, Harvey and Rubye Blazier entered into a contract for the purchase of the described real estate from John and Nola Duley which was recorded on October 16, 1962; that on August 11, 1966, John and Nola Duley conveyed the described premises to Rubye Blazier by warranty deed which was recorded on August 14, 1966; that at least 50% of the purchase price for the described property was furnished by Harvey Louis Blazier and by reason thereof, there was created a resulting trust in his favor with Rubye Blazier as trustee; that on February 9, 1968, Rubye Blazier executed a lease and option to Luther Adams in which Harvey Louis Blazier did not join; that on April 25, 1968, Rubye Blazier executed a land purchase contract with and drawn by appellants, in which Harvey Louis Blazier did not join, notwithstanding the fact that appellants knew that Rubye and Harvey Louis Blazier were married at that time; that at the time of the execution of this contract, appellants knew that Rubye Blazier and Harvey Blazier were married and that she was not a widow as stated in the contract and that Rubye E. Blazier was mentally weak, was ignorant of the consequences of her acts and did not have needed legal counsel or other competent advice as to this transaction; that at the time of the execution of this contract, appellants used undue influence upon Rubye Blazier, well knowing that she needed money, offered an inadequate price for the premises and misrepresented or concealed from her the consequences of her acts; that on August 14, 1968, a divorce decree was granted which provided that Rubye Blazier and Harvey Louis Blazier agreed to sell the described premises and divide the net proceeds; that Rubye and Harvey Louis Blazier gave a notice of cancellation of the contract to appellants on August 19, 1968, and attempted to return the $150 down payment; that since the granting of the divorce, Rubye Blazier married William Grace who claims an inchoate right of dower in the interest

of Rubye Blazier in the described premises. Appellees' counterclaim prayed that the contract of April 25, 1968, between Rubye Blazier Grace and appellees be declared null and void.

Appellants filed no answer or motion to appellees' answer and counterclaim. On October 22, 1968, appellees' attorney wrote a letter to appellants' attorney indicating that no answer to the counterclaim had been filed and asking whether such an answer would be filed. No response was made to this inquiry by appellants' attorney. On November 27, 1968, appellees filed a motion for default judgment on their counterclaim and notice was sent to appellants' attorneys that a hearing would be held on the motion on December 5, 1968. On that date, no one appeared for appellants. Appellees testified briefly in their own behalf and the court entered a default judgment sustaining appellees' counterclaim. This order was filed December 16, 1968. On January 2, 1969, appellants filed a motion to vacate the default judgment stating that (1) they had an adequate defense to the counterclaim, (2) no rule to plead was entered against them, and (3) that the matter should be heard on its merits. On January 18, appellees filed a cross motion to strike appellants' motion to vacate the judgment. Appellees' attorney sent notice by certified mail postmarked February 14, 1969, to appellants' attorneys that a hearing would be held on their cross motion on February 21, 1969. This notice was filed on February 18, 1969, and the record indicates that it was not received by appellants' attorney until February 21, the date of the hearing. No one appeared for appellants at that time, and the court entered an order on that date sustaining appellees' cross motion to strike appellants' motion to vacate.

On March 11, 1969, appellants filed a motion to vacate the trial court's order of February 21 alleging that the notice given by certified mail was not received until

February 21, 1969, the date of the hearing, and that the hearing was not set by the court and no notice was given by the clerk. Appellees filed a cross motion to strike appellants' motion, alleging that on February 10, 1969, appellees' attorney wrote to appellants' attorney suggesting that defendants' cross motion to strike appellants' motion to vacate the default judgment entered on December 17 be heard on either February 20 or February 21; that appellants' attorney did not respond to the letter and appellees' attorney set the hearing with the trial court for February 21; that on February 14 appellees' attorney mailed a notice by certified mail to appellants' attorney in his office at Carmi, Illinois, which mail normally arrives within one day; that appellants' attorney failed or refused to accept this notice and that appellants' attorney was negligent in so doing; that appellants have not shown that they were not negligent in their failure to file the required answer to defendants' counterclaim as required by section 182(b) of the Supreme Court Rules, nor have they shown that they have exercised reasonable diligence or have had a reasonable excuse for their failure to comply nor have they shown facts showing that they had a meritorious defense to defendants' counterclaim.

After a hearing on April 16, at which counsel for all parties were present, the court entered the order now on appeal denying appellants' motion to vacate the default judgment and the prior ruling sustaining appellees' cross motion to strike appellants' motion to vacate.

The proof offered by appellees on their motion for default judgment on their counterclaim consisted of the following testimony:

Harvey Louis Blazier testified that he was married to Rubye Blazier from July 12, 1961, until August 14, 1968. They were separated some time in 1967. He and his wife Rubye had entered into a contract to buy the described property from John and Nola Duley on Octo-

ber 13, 1962, but on August 11, 1966, a deed was issued only to his wife. Of the total consideration of $1,500 at that time, he paid $1,000. He was not a party either to the lease or land purchase contract given by Rubye Blazier to appellants. He had no knowledge of either of these transactions, and had not been consulted. During the early part of 1968, his wife was under care at Bowen Center for her mental condition. The lease and land purchase contract were executed during this time. A social worker with the Children and Family Services had recommended that his wife undergo these treatments. He does not think she was able to make a contract because of her sickness. The contract with appellees calls for a consideration of $1,000. Other persons are now willing to pay $2,000 for the property.

Rubye Blazier Grace testified that she had been committed to Anna State Hospital in 1959, where she stayed for nine months. She had another breakdown in December 1967, and was hospitalized in Pierce Hospital in Eldorado. She underwent treatment at Bowen Center from January 1968 for approximately six months. She testified that she did not understand what she was doing nor did she consult any lawyer or any other person about these transactions. She said the reason she sold the property is that she was on relief and needed money badly. She did not read the land sale contract which was prepared by appellants. She felt she was unduly influenced by appellants. She and Harvey Louis Blazier sent a notice of cancellation, along with the return of the down payment of $150, to the appellants. She has had occasion since that time to sell her property for $2,000. She testified that appellants knew she was married at the time she made the contract, even though the contract stated she was a widow and that appellants also knew of her mental condition.

William Grace testified that he is now married to Rubye Blazier Grace and that he has knowledge of her

past mental history and that he does not believe that she had the mental capacity to make a contract.

The issue before this court is whether the trial court should have set aside the default judgment entered on appellees' counterclaim and permitted appellants to answer and proceed to trial on the merits. The applicable section of the Civil Practice Act provides:

"(5) The court may in its discretion, before final order, judgment or decree, set aside any default, and may on motion filed within 30 days after entry thereof set aside any final order, judgment or decree upon any terms and conditions that shall be reasonable." (Ill Rev Stats, c 110, § 50, par 5.)

The law pertaining to vacation of default judgments pursuant to section 50, par 5, with which we are in accord, is well stated in several recent Appellate Court decisions.

In the leading case of Widicus v. Southwestern Elec. Cooperative, 26 Ill App2d 102, 167 NE2d 799, the court stated at 107–109:

". . . History will reveal that the courts of Illinois have been liberal in setting aside defaults entered at the same term, and that where there has been no trial on the merits, the courts' discretion is usually exercised in favor of granting the motion. Moreover, our legislature has directed that our Practice Act be liberally construed so that controversies may be speedily and finally determined according to the substantive rights of the parties.

". . .

"In view of the fact that the statute, as it now stands, does not contain the requirement that good and sufficient cause appear, we do not believe that a court now must categorically determine that a meritorious defense or a reasonable excuse be proven to justify setting aside a default. We believe

that the discretion will be properly invoked if it is based upon principles of right and wrong and is exercised for the prevention of injury and the furtherance of justice.

"...

"The question of whether or not a court should set aside a default should be so resolved as to do substantial justice between the parties and with the idea in mind of carrying out, insofar as it is possible, the determination of matters upon their merits. In resolving this problem, a court may well consider whether or not a defendant has a meritorious defense, and whether or not defendant's delay in responding to the court's command actually jeopardizes plaintiff's basic position. But this should not be the only, nor necessarily, the determining factors. It seems to us that the overriding reason should be whether or not justice is being done. Justice will not be done if hurried defaults are allowed any more than if continuing delays are permitted. But justice might, at times, require a default or a delay. What is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations, regardless of the outcome.

"The entering of a default is one of the most drastic actions a court may take to punish for disobedience to its commands. The court has other powers which are ample in most instances. In our judgment, a default should only be condoned when, as a last resort, it is necessary to give the plaintiff his just demand. It should be set aside when it will not cause a hardship upon the plaintiff to go to trial on the merits."

And in Lynch v. Illinois Hospital Services, Inc., 38 Ill App2d 470, 187 NE2d 330, where an order of the trial

77

court denying defendant's motion to vacate a default judgment was reversed, the court stated at 475–476:

". . . A default should be entered when, as a last resort, it is necessary to give the plaintiff his just demand. It should be set aside when it will not cause a hardship upon the plaintiff to go to trial on the merits.

". . . We are not prepared to say that the order of the trial court denying the petition to set aside the default, was an abuse of discretion. We do not believe it is required, under the liberal interpretation and rules of the cases of Widicus v. Southwestern Electric Cooperative, Inc., 26 Ill App2d 102, 167 NE2d 799, In re Estate of Hoyman, 27 Ill App2d 438, 170 NE2d 25, Kehrer v. Kehrer, 28 Ill App2d 296, 171 NE2d 239, and Wolder v. Wolder, 30 Ill App2d 98, 173 NE2d 546, that this court determine as a matter of law, that the trial court exceeded or abused its discretion in denying the petition to set aside a default. We believe the overriding rule that should determine cases of this character, is whether or not justice is being done."

This reasoning has been approved in this court in Sentry Royalty Co. v. Kraft, 79 Ill App2d 410, 226 NE2d 282, and therefore, it is in light of these principles that we view the facts and contentions in the present case. Appellants' counsel admits that he failed to file an answer to appellees' counterclaim and that he received appellees' notice of motion for default judgment on the counterclaim but did not appear, and he offers no excuse or explanation for these failures. Appellant contends that no rule to plead was issued and no date was set by the court either for the motion for default judgment or on the motions to vacate the default judgment and the cross motion to strike that motion. Section 50, paragraph 4 provides that default judg-

ment may be entered for failure to plead, and the Joint Committee comments to that subsection indicate that this includes any pleading requiring an answer, including an answer to a counterclaim. Supreme Court Rule 182(b) (Ill Rev Stats 1965, c 110A, § 182(b)), requires that "answers to and motions directed against counterclaims shall be filed by parties already before the court within twenty-one days after the last day allowed for the filing of the counterclaim," and with this statutory requirement no rule to plead is necessary. Michael v. Mace, 137 Ill 485, 27 NE 694. Appellants admit there is no local court rule requiring a rule to plead in order to place a party in default.

■ Next, we find no merit to appellants' contention that the sending of the notice for a hearing on the motion for default judgment by opposing counsel, rather than by the clerk of the court, excuses his conduct where he actually receives that notice.

Appellants strenuously contend that they had a meritorious defense to the counterclaim, in that the counterclaim is not well pleaded and is not supported by evidence, and thus cannot sustain a default judgment. It should first be noted that, while appellees' counterclaim makes allegations that the described property is subject to a resulting trust in favor of Harvey Louis Blazier and an inchoate right of dower in William Grace, the prayer for relief in the counterclaim requested only that the land sale contract be declared null and void. This was the only relief which was given and which could have been given in the order for default judgment. The nature of this relief would necessarily depend upon the rights of Rubye Blazier Grace only, and for this reason we consider appellants' contention only with respect to her claim.

■ ■ It is clear that a contract may be set aside where one party to the transaction suffers from mental weakness, coupled with a lack of business experience,

inadequacy of price, proof of stress of financial necessity, lack of advice or misrepresentation or concealment. We believe that appellees' counterclaim contains sufficient allegations to sustain this cause of action and that the evidence, while brief and sometimes conclusory, is sufficient to support this default judgment and certainly does not defeat it. There was testimony by Rubye Blazier Grace's first and second husbands who would have had an opportunity to observe her over a period of time and were able to express an opinion as to her mental capacity, that she was not capable of making a contract. There was also evidence that she had been released from a mental hospital but was undergoing treatment during the time when these transactions occurred; that she was on relief during that time; that the consideration to be paid under the contract of $1,000 was $500 less than that paid by Harvey and Rubye Blazier six years previously and $1,000 less than the present offer for the property; that she did not consult an attorney or any other person before making this contract; that she had not read the contract and that the appellants had prepared it. The best that can be said then, is that the allegations of the counterclaim and the evidence created a triable question of fact as to the mental capacity of Rubye Blazier Grace.

On the other hand, we note that appellees have not shown any particular hardship which would jeopardize their position if they were required to go to trial on the merits of this case.

Although we are disturbed by counsel's tacit admission of, and failure to explain, his failure to file an answer or to appear for the hearing on default, we are mindful, as was the court in Mieszkowski v. Norville, 61 Ill App2d 289, 209 NE2d 358, that a default judgment resulting from the negligence of an attorney, even though imputed to his client (Lamoreau v. Havranek, 25 Ill App2d 51, 165 NE2d 547) often visits drastic and vicarious punish-

ment on an unsuspecting litigant. There is no indication in the record or allegation by appellees' counsel that the appellants knew, had reason to know, or participated in their attorney's conduct. And while inadvertent or negligent conduct which is imputed to the litigant is not an excuse to vacate a judgment, neither should it necessarily bar such relief.

■ As in Lynch v. Illinois Hospital Services, Inc., supra, we do not find it necessary to find that the trial court abused its discretion in denying appellants' motion to vacate, but on the basis of the record before us, we believe that justice would best be served by reversing the order of the trial court and remanding this case with instructions to set aside the default judgment and permit appellants to plead to appellees' counterclaim and proceed to a determination of this matter on its merits. Nothing we have stated in this opinion should be construed to support either the position of the appellants or the appellees in the determination of this cause on its merits.

Therefore, the order of the Circuit Court of Gallatin County is reversed and remanded with directions to permit appellants to plead to appellees' counterclaim and to proceed with the trial of this cause on its merits.

Reversed and remanded with directions.

GOLDENHERSH and EBERSPACHER, JJ., concur.