*In re* MARRIAGE OF CLETUS RICHARD GARDE, Petitioner and Counterrespondent-Appellant, and BEVERLY ANN GARDE, Respondent and Counterpetitioner-Appellee.

Fifth District   No. 82—681

Opinion filed September 19, 1983.

Earl L. Vuagniaux, P.C., of Edwardsville, for appellant.

D. Kent Trone, of Edwardsville, for appellee.

JUSTICE KARNS delivered the opinion of the court:

Petitioner, Cletus Richard Garde, appeals from the judgment of the circuit court of Madison County denying his motion to vacate a judgment entered after trial at which only the wife, Beverly Ann Garde, appeared and presented evidence. The judgment provides for the division of property and maintenance in an action for dissolution of marriage.

Cletus and Beverly Ann Garde were married on March 23, 1979, and separated July 29, 1981. There were no children of this marriage. While married, the Gardes purchased a 1981 Ford Escort and a house in Edwardsville, Illinois. Beverly Ann already owned several vehicles and a house in Arnold, Missouri. In 1980, the title to the Missouri house was put in their joint names. Each party owned household goods and other personal property at the time of their marriage and each was employed during the marriage.

Both parties sought dissolution of the marriage and temporary relief with regard to property. On Cletus' motion of January 12, 1982, the court entered an *ex parte* order enjoining both parties from disposing of any assets. On January 20, 1982, the court granted Beverly Ann's petition ordering Cletus to pay her $245 per month temporary maintenance and requiring him to make mortgage payments on the house in Arnold, Missouri, where Beverly was then living.

The matter was tried on its merits in a bifurcated proceeding. At the first hearing on August 31, 1982, the court dissolved the marriage on the grounds of Cletus' extreme and repeated mental cruelty. The

earlier order of temporary relief was continued in full effect until the second hearing could be held on "the remaining issues and permanent relief." The second trial was set for October 4, 1982. On September 2, 1982, an employee in the circuit clerk's office prepared a notice of the second trial date and followed established office procedures in mailing carbon copies of the notice to D. Kent Trone, attorney for Beverly Ann, and to Joseph Kelleher, attorney for Cletus.

Kelleher and Cletus deny having received the circuit clerk's notice of the October 4 trial. At the hearing to vacate the judgment, Kelleher and his secretary testified that they had experienced difficulty in receiving mail unless it was addressed to "P. O. Box 224." The secretary admitted, however, that a copy of the notice prepared by the circuit clerk's office was addressed to "P. O. Box 224." The notice of the October 4 trial had not been returned to the circuit clerk's office by the postal service, and that office was unaware of any problem with the notice.

Between September 8 and September 29, 1982, both attorneys received documents in which October 4, 1982, was recited as the date of trial. Kelleher admitted that he received and discussed with Cletus Beverly Ann's Motion to "Permit Access to and Inspection of Real Estate for the Purpose of Making Appraisals." This motion stated "that the hearing on all the remaining issues herein is presently scheduled for Monday, October 4, 1982, at 1:00 p.m. ***." Both Mr. Kelleher and his secretary admitted receiving Beverly Ann's "Supplemental Notice Requiring the Petitioner-Counterrespondent to Appear and to Produce Certain Records *** at the trial and/or hearing herein on all the remaining issues herein on Monday, October 4, 1982 ***." Kelleher directed his secretary to reverse the names of the parties and send the same demand for records to Beverly Ann. The first paragraph of the supplemental notice signed by Kelleher stated that the trial date was October 4, 1982.

When neither Cletus nor Kelleher appeared at trial on October 4, the court checked with the attorney's office and learned he was out of town on another matter. After hearing Beverly Ann's testimony and evidence on all remaining issues, the court divided the property and modified the temporary maintenance order. Cletus was awarded the Edwardsville house after paying $15,000 to Beverly Ann. She retained the Missouri property. Each was responsible for the mortgages and indebtedness on their respective houses. Beverly Ann received all the personal property at the Arnold house as well as specified items of personal property in Cletus' possession. Cletus received the 1981 Ford while Beverly Ann kept the vehicles she had owned before the

marriage. Each retained all bank accounts not held in their joint names and life insurance policies, with Cletus retaining all his pension and retirement programs as well. Although Cletus was ordered to pay the balance due to Psychiatric Associates, Inc., and other debts incurred through September 29, 1981, each party was responsible for debts incurred after their separation as well as attorney fees and expenses. Finally, Cletus was ordered to pay $245 in arrears on the temporary maintenance payments and $500 per month as permanent maintenance for 12 months after entry of judgment.

Within days of the entry of judgment, Cletus filed two motions to have it vacated. On October 13, 1982, Kelleher filed a motion to vacate the judgment which alleged that Cletus believed he had "a good and meritorious defense to many of the claims of Beverly Ann Garde with regard to property ***." Two days later, Earl L. Vuagniaux, Cletus' new attorney, moved to vacate the judgment because of "a good and meritorious defense *** with regard to the issues pending on October 4, 1982." Neither motion was signed nor verified by Cletus. Neither contained facts in support of the claim of a good defense.

After hearing argument on both motions, the trial court denied them. In a supplemental order of court, the trial judge stated his finding that Kelleher had received notice of the October 4 trial by receiving Beverly Ann's motion for inspection of the property and motion to produce records at trial. The court further found that subsequent to the October 4 trial and Kelleher's inspection of the court file, Kelleher's motion to produce had been removed from the court file and an altered photocopy of the circuit clerk's notice had been substituted for the original. The altered copy was addressed to Kelleher at "Route 157 South" instead of "P. O. Box 224" as in the original. From these facts, the trial court concluded that Kelleher had received the circuit clerk's notice.

At issue is whether the trial court erred in denying the motions to vacate the judgment. We affirm.

■■ Although both parties speak of the October 4 judgment as a default judgment, we think it is properly characterized as a judgment on the merits entered after an *ex parte* hearing. The court acted fully in accord with the rule that "once a defendant appears and places in issue the allegations in the complaint a trial court cannot enter a default judgment merely because defendant failed to appear at trial. A plaintiff must proceed to prove his claim as if the defendant had been present to try the case." (*Ryan v. Bening* (1978), 66 Ill. App. 3d 127, 131, 383 N.E.2d 681, 683; *Koenig v. Nardello* (1968), 99 Ill. App. 2d 480, 241 N.E.2d 567.) Beverly Ann appeared at the Octo-

ber 4 hearing and presented evidence. Lacking a report of the proceedings of the October 4 hearing, we presume the trial court heard adequate evidence to support its judgment, as it stated in the final judgment. *Smith v. Smith* (1962), 36 Ill. App. 2d 55, 183 N.E.2d 559.

■■■ Cletus sought to vacate the judgment under present section 2—1301(e) of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 2—1301(e), formerly Ill. Rev. Stat. 1981, ch. 110, par. 50(5)) which provides: "The court *** may on motion filed within 30 days after entry thereof set aside any final order or judgment upon any terms and conditions that shall be reasonable." The court's premier concern in such a case must be whether substantial justice is being done between the litigants and whether, under the circumstances, it is unreasonable to force the other party to trial on the merits. (*People ex rel. Reid v. Adkins* (1971), 48 Ill. 2d 402, 406, 270 N.E.2d 841, 843.) Factors in determining whether to vacate a judgment are the movant's due diligence and showing of a meritorious defense or a good excuse. *Brown v. Drovers National Bank* (1977), 54 Ill. App. 3d 593, 370 N.E.2d 30.

■■ Neither of petitioner's unverified motions to vacate does more than allege a good and meritorious defense. The record of the hearing on the motions to set aside the judgment reveals no argument of a meritorious defense. As we said in *Baltz v. McCormack* (1978), 66 Ill. App. 3d 76, 383 N.E.2d 643, the trial court did not err in refusing to vacate a judgment where the unverified motion was bare of facts to support a claim of meritorious defense.

■■■ Seeking to excuse his absence from court on October 4, Cletus makes much of the claim that neither he nor his attorney received notice of the October 4 trial from the circuit clerk's office, the lack of which deprived him of his day in court. We think that Cletus' day in court was not denied but ignored. The record makes crystalline the fact that Kelleher had actual notice of the trial date from the motions received from the opposing party. Kelleher discussed the first of these motions with Cletus and adapted the second to his own purposes, sending it out over his own signature. "The object of notice is to inform the party notified, and if the information is obtained in any other way other than by formal notice, the object of notice is attained." (*Schumacher v. Wolf* (1905), 125 Ill. App. 81, 84.) In *Adams v. Grace* (1970), 128 Ill. App. 2d 69, 79, 262 N.E.2d 489, 494, the court found no merit in appellant's argument "that the sending of the notice for a hearing *** by opposing counsel, rather than by the clerk of the court, excuses his conduct where he actually receives that notice."

Moreover, the trial court could reasonably have concluded that

Kelleher had received the circuit clerk's notice. Kelleher's secretary admitted that the notice was addressed to the office to which Kelleher's mail was routinely delivered. No rebuttal was made to testimony that the notices had been placed in properly addressed envelopes, posted in the normal manner and had not been returned. Unknown persons eliminated from the court file evidence which could support the court's conclusion that Kelleher had received notice of the October 4 hearing.

■ The trial court took the view that the litigant was bound by his attorney's acts. While the practice of imputing an attorney's negligence to his client may sometimes visit "drastic and vicarious punishment on an unsuspecting litigant" (*Adams v. Grace* (1970), 128 Ill. App. 2d 69, 80-81, 262 N.E.2d 489, 495), we think the court's refusal to vacate the October 4 judgment left in place a property division which has not been shown to be unfair. In his motions to set aside the judgment, Cletus neither alleges unfairness nor supplies facts to support such an allegation. At the hearing to set aside the judgment, no evidence was offered to show that the division was not a just one. Justice does not require a second hearing where a previous opportunity to speak was not seized. *In re Marriage of Kopec* (1982), 106 Ill. App. 3d 1060, 436 N.E.2d 687.

■ Finally, it is argued that where the record shows litigation would pose no hardship for the opposing party, the judgment should be set aside. Hardship, however, is not considered in isolation and "[a] court *** can consider the conduct of the moving party and weigh the possibility of hardship to the opposing parties." (*Green v. Myers* (1982), 106 Ill. App. 3d 541, 543, 436 N.E.2d 43, 45.) Under the circumstances, we think it is a hardship to require Beverly Ann to reassemble her Missouri witnesses for further trial in Edwardsville, Illinois.

■ The task of the trial court is to "distribute marital property in an equitable manner taking into account all relevant factors and its decision in this regard will not be reversed absent an abuse of discretion." (*In re Marriage of Kopec* (1982), 106 Ill. App. 3d 1060, 1063-64, 436 N.E.2d 684, 687.) "[A]ll property acquired by either spouse after the marriage *** is presumed to be marital property, regardless of whether title is held individually or by the spouses in some form of coownership ***." Nonmarital property includes "property acquired before the marriage ***. The court shall assign each spouse's nonmarital property to that spouse." (Ill. Rev. Stat. 1981, ch. 40, par. 503.) Maintenance may be awarded "in such amounts and for such periods of time as the court deems just *** after consideration

of all relevant factors." Ill. Rev. Stat. 1981, ch. 40, par. 504.

In the present case, it appears to us that the trial court has dealt equitably with the parties. Beverly Ann was awarded her original home in Missouri and several vehicles she owned with her children. She also received personal property at the Missouri house and specific items, mostly jewelry and mementos, which were in Cletus' possession. She was awarded $15,000 for her interest in the Edwardsville house which was marital property purchased for $70,000 and encumbered with a mortgage of less than $8,000. Cletus was given the Edwardsville home from which he was receiving rental income. He also received the 1981 Ford bought during the marriage. Each party was responsible for the remaining obligations on their respective vehicles and houses. Beverly Ann's mortgage payment was more than double the amount of the mortgage on the Edwardsville house awarded Cletus. Cletus was not required to pay Beverly Ann's debts subsequent to their separation or her attorney fees and expenses. The maintenance payments of $500 per month were to continue for 12 months. In light of all the relevant factors, including the relative earning capacities of the parties, the substance of the judgment was not fundamentally unfair to the parties.

For the foregoing reasons, the judgment rendered by the circuit court of Madison County is affirmed.

Affirmed.

HARRISON, P.J., and JONES, J., concur.