THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, *v.* JEFFREY BURKE CRANFORD *et al.*, Defendants-(Grow Group, Inc., Cross-Plaintiff-Appellee, *v.* Jeffrey Burke Cranford *et al.*, Cross-Defendant-Appellants).

Fifth District    No. 82—598

Opinion filed September 30, 1983.

Fred Prillaman, of Mohan, Alewelt and Prillaman, of Springfield, for appellants.

Marvin W. Goldenhersh, of Goldenhersh and Goldenhersh, P.C., of Belleville, for appellee.

JUSTICE KARNS delivered the opinion of the court:

Petitioners Jeffrey Burke Cranford and Environmental Waste Services, Inc. (EWSI) d/b/a Environmental Systems, appeal from the judgment of the circuit court of St. Clair County awarding $145,460.06 in damages to the respondent, Grow Group, Inc. (Grow Group) on Grow Group's "Motion that Pleadings of Certain Defendants Be Stricken and Motion for Judgment Against Said Defendants" which incorporated Grow Group's cross-complaint alleging breach of contract and fraud. Judgment was entered after a trial at which only Grow Group was present.

This dispute is a sequel to an action by the State of Illinois in which all parties to this appeal were defendants charged with violating the Illinois Environmental Protection Act by improperly disposing of industrial wastes in East St. Louis and Belleville, Illinois. Under the consent decree which resolved the State's suit, Cranford and EWSI d/b/a Environmental Systems were to remove and dispose of all illegally dumped wastes except those belonging to Grow Group and another codefendant. By stipulation, Grow Group denied knowledge of the improper handling of its wastes but agreed to remove all its waste materials as well as contaminated soil and water from the dump sites. On July 21, 1981, the court found that the terms of the consent decree had been met.

In a cross-complaint filed on October 9, 1980, Grow Group sought to recover from Cranford and EWSI $150,000 for payments to Environmental Systems for proper transport and disposal of paint wastes in Tennessee as well as for Grow Group's expenses in cleaning up the dump sites in Belleville and East St. Louis. In count I of the cross-complaint, Grow Group alleged that both the EWSI and Cranford had breached an oral agreement to "transport the waste material to an incinerator disposal facility in Memphis, Tennessee, and to dispose of the waste material in compliance with all applicable provisions of Environmental Protection Agency (E.P.A.) statutes, rules and regulations, both federal and state." Grow Group further alleged that the cross-defendants arranged for the wastes to be illegally deposited in Illinois. In count II, Grow Group sought recovery from Cranford individually because he "knew or should have known that said waste material was not being brought to *** Tennessee for disposal legally *** [but] he continued fraudulently and under false pretenses *** to cause invoices to be sent to the Cross-Plaintiff and *** to cause the Cross-Plaintiff to forward checks in payment of said invoices ***." Count III asked punitive damages for Cranford's fraud. Count IV sought recovery from Edmund Edward Raines II, not a party to the present

appeal, whom Cranford was alleged to have hired to haul the illegally deposited waste.

In support of Grow Group's allegations, it filed an affidavit by its counsel and assistant secretary in which he stated that Cranford d/b/a Environmental Systems had disposed of waste for Grow Group's Illinois and St. Louis divisions. Documentary exhibits were filed to substantiate the assertions in the affidavits. Copies of invoices showed "jbc" as the salesman who took the orders for disposal and, in several cases, showed that shipment was by "Raines" or "Raines Cartage." Checks made out to Environmental Systems indicated they were deposited to the account of Environmental Systems in Memphis, Tennessee, banks.

On December 9, 1980, Grow Group notified Cranford and EWSI of its intention to conduct a discovery deposition of Cranford immediately after a hearing on December 19, 1980. At that hearing the court, ruling on a series of motions by the appellants, ruled Cranford's special and limited appearance a general appearance, ordered both EWSI and Cranford to answer and plead to the cross-complaint, and granted Cranford's motion to quash the notice for the deposition scheduled immediately after the hearing. Cranford was ordered, however, to appear for a deposition on January 23, 1981, with all of his records relevant to payments for disposal of Grow Group's wastes. In a letter to Grow Group's attorney, Cranford's attorney stated his belief that in light of a Federal grand jury inquiry, Cranford would appear at the January 23 deposition but would not "answer any questions posed to him, the answer to which may tend to incriminate him." During the deposition on January 23, Cranford produced the records requested but answered only questions relating to his name and address, otherwise asserting his fifth amendment rights. After the deposition on January 23, 1981, neither party made any further efforts at discovery. Grow Group did not ask the court to compel Cranford to answer the questions propounded at the deposition nor did Grow Group complain that the records produced at the deposition were unsatisfactory in any way.

On August 26, 1982, Grow Group filed its "Motion That Pleadings of Certain Defendants Be Stricken and Motion for Judgment Against Said Defendants." The motion incorporated by reference the cross-complaint which had been answered by EWSI and Cranford, both denying that Cranford had done business as Environmental Systems as well as all other material allegations. In addition, Grow Group's motion stated that Cranford's refusal to answer questions at the January 23, 1981, deposition "constitute[d] a substantial and material detri-

ment to the availability of evidence in support" of Grow Group's claims. Grow Group's attorney attached his affidavit in support of the validity of the damages stated in the motion. Grow Group asked that "the pleadings of *** defendants be stricken, that a default be entered against *** defendants and that a judgment be entered in favor of" Grow Group in the amount of $145,460.06.

Cranford was notified that the hearing on Grow Group's motion was set for September 8, 1982, at 10 a.m. In amending the record on appeal, the parties stipulated that counsel for both sides had talked by telephone on September 7, at which time Cranford's attorney said he could not be present for the September 8 hearing and that he was sending his written objection with supporting affidavit by Federal Express to the presiding judge. The objection asked that Grow Group's motion be struck, characterizing it as "untimely and improper" under Supreme Court Rules relating to discovery because Grow Group had failed to ask the court to compel Cranford to answer the questions propounded at the January 23, 1981, deposition and had failed to show that Grow Group made any effort to resolve differences over discovery. The objection described the portion of Grow Group's motion which specified the damages as based on hearsay and conclusions "without documentary support, without adequate foundation, and without legal support ***." Describing the relief sought by Grow Group as that "obtainable only under Section 2–1005 of the Code of Civil Procedure (Summary Judgment)," Cranford objected that the affidavit in support of Grow Group's motion was insufficient under Supreme Court Rule 191 (87 Ill. 2d R. 191) in that it was not based on personal knowledge and lacked both factual and documentary support for its conclusions.

At 10 a.m. on September 8, 1982, Grow Group's attorney presented his motion. He informed the court of the attorneys' telephone conversation and Cranford's written objection which had been mailed the day before. Proceeding with the hearing as scheduled, the court found that the "said defendants obtained money from the plaintiff by false pretenses, false representations, and actual fraud." The record is silent as to the nature or extent of evidence presented to the trial court. It does not reveal that any pleading was stricken or that a default was entered against Cranford or EWSI. At approximately 10:15 a.m., judgment was entered in favor of Grow Group and against "Cranford, individually and d/b/a Environmental Systems and Environmental Waste Systems [sic], Inc." in the amount of $145,460.06. The parties agree that Cranford's written objection and accompanying affidavit arrived at the courthouse at approximately 10:41 a.m.

Appellants now ask us to decide whether: (1) it was error for the trial court to enter judgment against Cranford and EWSI for alleged noncompliance with discovery rules where Grow Group did not show an effort to reach an accommodation as to discovery; (2) it was an abuse of discretion for the trial court to enter judgment for $145,460.06 as a sanction where the only noncompliance was Cranford's assertion of his Fifth Amendment privilege against self-incrimination; (3) appellants are entitled to a trial on the issue of damages.

■ Appellants have mistaken the nature of the judgment entered against them. It is not a sanction for noncompliance with discovery rules. Supreme Court Rule 219(c) (87 Ill. 2d R. 219(c)) provides that a trial court which finds unreasonable refusal or failure to comply with discovery relating to any issue may

"(v) *** as to claims or defenses asserted in any pleading to which that issue is material, [enter] a judgment by default *** or

(vi) *** [strike] any portion of his pleadings relating to that issue *** and, if thereby made appropriate, judgment be entered as to that issue." (87 Ill. 2d R. 219(c).)

While it is true that Grow Group's motion prayed that defendants' pleadings be stricken, a default entered, and judgment entered in favor of Grow Group, and the motion alleged that Cranford's noncompliance was detrimental to Grow Group's presentation of its case, appellants admit that no pleading was stricken and no finding of default was made. Instead, the face of the judgment makes clear that the court considered the merits of the allegations set forth in the original complaint and incorporated in the later motion. The court found "that as alleged in the Cross-Complaint herein, said defendant obtained money from the plaintiff by false pretenses, false misrepresentations, and actual fraud." Although the appellants, having previously appeared and answered the complaint, did not appear at trial to contest the matter, they were entitled to have the factual issues decided by the court after hearing argument by the cross-plaintiff-appellee. (*In re Marriage of Garde* (1983), 118 Ill. App. 3d 303; *Dils v. City of Chicago* (1978), 62 Ill. App. 3d 474, 378 N.E.2d 1130; *Koenig v. Nardello* (1968), 99 Ill. App. 2d 480, 241 N.E.2d 567.) We think the trial court properly entered an *ex parte* judgment on the merits after hearing Grow Group's evidence.

Cranford quarrels with both the nature and sufficiency of the evidence on which the judgment was based. He argues that the judgment was entered over his objections to the conclusory nature of Grow Group's affidavit. This cannot be so unless we are to speculate that

Grow Group's attorney argued Cranford's objections. There is nothing in the record before us to show that Cranford's attorney presented his objections directly to the trial court before the hearing. The parties have stipulated that on September 8

"Mr. Goldenhersh [Grow Group's attorney] told Judge O'Donnell of the conversation he had had the previous day with Mr. Prillaman [Cranford's attorney], and that Prillaman had told him that Defendants' written Objections to the pending Motion had been mailed the previous day. Defendants' written Objection did not arrive in Judge O'Donnell's chambers, however, until after Judge O'Donnell had entered his order of September 8, 1982."

To resolve questions concerning the evidence considered by the trial court, we must turn to a record of the trial proceedings. We have been provided with no such record except the judgment itself. We concur with appellants' statement that "in the absence of any report of proceedings, it is presumed that the Trial Court heard adequate evidence to support its decision, unless there is a contrary indication in the Order." We do not agree, however, that silence as to what evidence was heard means no evidence was heard and that the trial court must therefore have relied on Grow Group's affidavit, which appellants consider insufficient to support the judgment. We need not decide the sufficiency of the affidavit because where, as in the present case, the judgment states that the trial court was "fully advised in the premises," the reviewing court must presume that the trial court "heard adequate evidence, received enough information or listened to sufficient law and argument, as the necessity of the particular case required, to enable the court to reach what it believed to be the right decision on the issue presented." (*Smith v. Smith* (1962), 36 Ill. App. 2d 55, 59, 183 N.E.2d 559, 561.) It is further presumed that a trial court sitting without a jury has heard only competent evidence. *Chicago City Bank & Trust Co. v. Ceres Terminals, Inc.* (1981), 93 Ill. App. 3d 623, 417 N.E.2d 798; *People ex rel. Hartshorn v. Hartshorn* (1959), 21 Ill. App. 2d 91, 157 N.E.2d 563.

If the appellants wish to challenge the evidence on which the court based its judgment, they must shoulder the burden of providing the reviewing court with a sufficient factual record of the trial proceedings. (*Teitelbaum v. Reliable Welding Co.* (1982), 106 Ill. App. 3d 651, 435 N.E.2d 852; *Mangiamele v. Terrana* (1976), 42 Ill. App. 3d 305, 355 N.E.2d 765.) Any doubts inspired by the incompleteness of the trial record will be resolved against the appellants. *Reed v. Hoffman* (1977), 48 Ill. App. 3d 815, 363 N.E.2d 140.

In the absence of a record of the evidence upon which the court based its judgment, we must accept that judgment as correct.

Affirmed.

JONES and KASSERMAN, JJ., concur.