ALEKSANDER MAREK, Plaintiff-Appellee, v. MICHAL STEPKOWSKI *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 1—91—3336

Opinion filed December 22, 1992.—Rehearing denied March 25, 1993.—Modified opinion filed March 30, 1993.

Nicholas F. Maniscalco, of Chicago, for appellants.

Goldstine, Skrodzki, Russian, Nemec & Hoff, Ltd., of Summit (William H. Hrabak, Jr., of counsel), for appellee.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court:

Defendants, Michal and Josef Stepkowski, appeal from judgment entered on a jury verdict finding defendants liable to plaintiff, Aleksander Marek, for $150,000 in damages because they beat plaintiff up outside a bar.

We find that the trial court did not commit reversible error by disallowing defense counsel's questions concerning defendants' attorney's advice and restitution awarded in a related criminal case. The trial court did not abuse its discretion by allowing plaintiff's counsel to argue that one defendant's unexplained absence from court showed that he did not care about the lawsuit. The trial court did not err when it refused four of the five instructions defendants offered. Defendants waived objection to the form of the verdict. The trial court properly construed the verdict when it ignored an attempted allocation of damages as surplusage. The amount of the judgment is not clearly excessive. Therefore, we affirm the trial court's judgment.

Plaintiff sued the defendants for wilful and malicious battery. Defendants filed an answer denying essentially all allegations of the amended complaint and pleading assumption of the risk as an affirmative defense. Plaintiff served notice on defendants' attorney, pursuant to Supreme Court Rule 237 (134 Ill. 2d R. 237), requiring defendants to appear at trial for plaintiff to examine them. Neither Michal nor Josef appeared on the first day of trial, and only Josef appeared on the second day. Most of the parties and witnesses spoke only Polish, so the court conducted much of the trial through interpreters.

Plaintiff testified that he had never seen defendants before August 31, 1985, when he went to a bar with Ada True. He noticed defendants staring at them during the evening. When he and True tried to leave the bar, defendants stood in their way. Plaintiff said "excuse me" and one of the defendants said "I am going to show you excuse me." He pushed plaintiff against a cigarette machine, and plaintiff fell to the floor. Plaintiff and True left, but defendants left the bar close behind them and followed them to plaintiff's car. One of the defendants hit plaintiff's head with a hard object and plaintiff fell. He did not hit either defendant and he had no chance to defend himself. He lost consciousness while defendants kicked him. He woke up for a moment after police arrived and again in the police wagon on the way to the hospital emergency room. When police gave him his wallet, he discovered that $150 he was carrying before the beating was gone. He paid medical bills totalling $9,682.10 for care of his injuries. He lost 53 days of work, for which he would have been paid $75 per day.

The parties stipulated that defendants pled guilty to aggravated battery of plaintiff in criminal court and that court sentenced them for the offenses. The criminal court's judgment is not included in the record on appeal.

True substantially corroborated plaintiff's testimony. She added to plaintiff's account more words exchanged between the parties: after plaintiff said "excuse me" and defendants pushed him down, plaintiff asked "for what you need this problem?" Defendants threatened to "beat [plaintiff's] face." While she and plaintiff were running to the car, plaintiff said to defendants something like "go back to restaurant, don't play hero." She also said that she drove plaintiff's car out of the lot while defendants were beating him, and she got help from passersby who chased defendants away. True tried to stop the bleeding from plaintiff's face and then she ran back to the bar to phone the police.

Defendant Josef Stepkowski testified that while he was sitting at the bar plaintiff touched him while passing behind him. Josef told plaintiff "you better go to sleep, you had a drink." Plaintiff answered, "if you are so strong so let's go outside." Defendants followed plaintiff out of the bar. Plaintiff hit Josef and Josef hit him back "[m]aybe once, twice." Michal tried to break up the fight. Josef did not see him hit plaintiff. Josef testified that Michal went to Poland a few days before trial. He offered no explanation for Michal's decision to leave the country. Josef admitted that he would not have come to court if plaintiff's attorney had not subpoenaed him.

Defense counsel asked Josef:

"[Y]ou pled guilty in criminal court, you did that on your attorney's advice?"

The court sustained plaintiff's objection, finding the question irrelevant. Counsel next asked:

"[D]id you pay [plaintiff] any money as restitution?"

The court again sustained plaintiff's relevance objection. When counsel began the next question: "Have you already compensated—," the trial court instructed him to "[g]o on[ ]to something else."

In closing argument plaintiff's counsel said:

"Jose[f] Stepkowski came in just today to be a witness for another attorney.

Micha[ ]l Stepkowski is apparently in Poland ***. It's obvious these people don't even care about being defendants in a lawsuit."

The court overruled defendants' objection. Counsel proceeded:

"They don't even care. They don't care what they did to [plaintiff] and I think because of that you must award some damages to punish them and to get their attention and tell them that this is *** outrageous."

Plaintiff requested more than $80,000 in compensatory damages and $150,000 in punitive damages.

Defendants tendered five instructions. Defendants based instructions 1 and 2 on the theory that plaintiff assumed the risk of injury by engaging defendants in a fight, and that assumption of the risk was an absolute defense, which, if proved, deprived plaintiff of all right to recovery. The trial court refused the instructions because they misstated the law. The trial court gave defendants' instruction 3, which states that if plaintiff assumed the risk of injury, "the total amount of damages to which he would otherwise be entitled *** is reduced in proportion to the amount of his fault in assuming the risk." Defendants based instructions 4 and 5 on the theory that plaintiff was guilty

of contributory wilful and wanton misconduct. The trial court refused the instructions because defendants, in their answer, did not allege contributory wilful and wanton misconduct.

To make a record on the instructions, defense counsel stated that instructions 1 and 2 should have been given because assumption of risk was a complete defense when this battery occurred. He did not seek leave to file an amended answer, and he did not present an amendment to match his proposed instructions 4 and 5 to the court. Defendants did not object to the verdict forms plaintiff submitted, although the forms did not require the jury to distinguish economic from noneconomic damages. Defendants offered no verdict forms.

The jury found for plaintiff, assessing damages of $150,000, but under the line for the damage assessment, the jury added, "(Divided by both brothers $75,000.00)." The court entered judgment against both defendants for $150,000.

■ Defendants contend that the trial court prevented them from explaining why they pled guilty to aggravated battery. The only effort defendants made to explain their guilty pleas came in Josef's testimony, when his counsel asked whether his attorney advised him to plead guilty. Defendants do not explain the relevance of counsel's advice. All the response sought would have shown, apparently, is that, because "the defendant had the additional safeguard of representation by counsel, *** the likelihood of an unjust conviction has been minimized and the defendant's conviction is reliable evidence of the fact that he did in truth commit a battery." (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 150, 384 N.E.2d 335.) Defendants suffered no prejudice from exclusion of this evidence. In this case, as in *Galvan v. Torres* (1956), 8 Ill. App. 2d 227, 233, 131 N.E.2d 367, counsel did not ask defendant why he pled guilty. Exclusion of evidence of his attorney's advice was not error.

■ Defendants claim that the trial court should have permitted them to introduce evidence of the amount of restitution they paid plaintiff as part of their sentence for aggravated battery. Where amounts a defendant has paid a plaintiff as compensation for injuries may be deducted from the total damages sustained, "the function of the jury [is] to find the plaintiff's total damages, and the function of the judge, upon application of the defendant after verdict, [is] to find the amount by which such verdict should be reduced." (*De Lude v. Rimek* (1953), 351 Ill. App. 466, 474, 115 N.E.2d 561.) The trial court correctly determined that evidence of restitution was irrelevant to the question for the jury, and thus it properly excluded the evidence. See *Webb v. Toncray* (1981), 102 Ill. App. 3d 78, 83, 429 N.E.2d 874; *Bur-*

*ger v. Van Severen* (1963), 39 Ill. App. 2d 205, 214-15, 188 N.E.2d 373.

■ In their reply brief defendants ask this court to reduce the damage award by restitution paid. As plaintiff points out, defendants never sought this relief from the trial court, and defendants never even submitted evidence that they paid restitution, or if they did, what amount they paid. Accordingly, this issue is not preserved for review. See *Pecora v. Szabo* (1981), 94 Ill. App. 3d 57, 418 N.E.2d 431.

■ Defendants contend that the judgment must be vacated because of comments plaintiff's counsel made in closing argument concerning Michal's failure to appear for trial. Defendants advance the novel argument that Michal, a defendant, was not under defendants' control, and he was equally available to both parties, so counsel could not draw any adverse inference from his failure to testify. See *Flynn v. Cusentino* (1978), 59 Ill. App. 3d 262, 375 N.E.2d 433.

"In arguing a case to the jury, counsel is allowed broad latitude in drawing reasonable inferences and conclusions from the evidence. [Citation.] The scope of permissible argument is within the sound discretion of the trial court." (*Friedland v. Allis Chalmers Co.* (1987), 159 Ill. App. 3d 1, 5, 511 N.E.2d 1199.) Josef testified that Michal went to Poland a few days before trial. Defendants offered no explanation for his abrupt departure. Plaintiff's counsel invited the jurors to infer that Michal did not care about the lawsuit. This is a legitimate inference from Michal's unexplained absence, especially in light of plaintiff's Rule 237 notice for both defendants to appear, and the failure of either Josef or Michal to appear for the first day of trial. The trial court did not abuse its discretion by permitting this argument.

Defendants maintain that the trial court failed to instruct the jury on their theory of the case. Of the five instructions defendants offered, the trial court gave one, rejected two because they presented issues not raised by the pleadings, and rejected the other two because they misstated the law.

■ Defendants based their first two instructions on the theory that assumption of the risk was a complete defense to plaintiff's cause of action. In *Duffy v. Midlothian Country Club* (1985), 135 Ill. App. 3d 429, 435-36, 481 N.E.2d 1037, the court held that implied assumption of the risk was no longer a complete defense in negligence actions. Plaintiff here advanced an action for wilful battery, for which implied assumption of the risk has never been a complete defense. (*Downing v. United Auto Racing Association* (1991), 211 Ill. App. 3d 877, 889-90, 570 N.E.2d 828.) Plaintiff's implied assumption of the risk may be grounds for reducing plaintiff's recovery, but it does not

preclude recovery altogether. (*Downing*, 211 Ill. App. 3d at 889-90.) Thus, the trial court here instructed the jury on defendants' theory when the court told the jurors that they could reduce plaintiff's recovery by his comparative fault if they found that he implicitly assumed the risk by fighting with defendants. This instruction may have been erroneous because assumption of the risk, like negligence, may not provide grounds for reducing a damage award where defendant is guilty of wilful and wanton misconduct. (See *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 451, 593 N.E.2d 522.) However, neither party has objected to this instruction and it had no effect on the outcome of trial since the jury found that plaintiff did not assume the risk. The first two rejected instructions, which would have precluded plaintiff's recovery if the jury found he assumed the risk, did not correctly state applicable law. The trial court's refusal to give incorrect instructions was not error. *Sweeney v. Max A.R. Matthews & Co.* (1970), 46 Ill. 2d 64, 69, 264 N.E.2d 170.

■ Defendants based instructions 4 and 5 on the theory that plaintiff was guilty of contributory wilful and wanton misconduct, although they did not raise that issue in their answer or affirmative defense. "Generally, no instruction need be given the jury concerning issues not raised by the pleadings. [Citations.] To instruct a jury on an issue not raised in the pleadings is error." *Blackburn v. Johnson* (1989), 187 Ill. App. 3d 557, 564, 543 N.E.2d 583.

In their reply brief defendants ask this court to remand so that they can amend their pleadings. In *Blackburn,* as in this case, the defendant failed to present a proposed amended pleading to the trial court. The defendant in *Blackburn* "filed a motion for leave to file an [amended] answer to plaintiff's second-amended complaint with [the appellate] court, asserting for the first time the comparative negligence theory. It is too late to close the barn door. *** Even if the evidence would support such a defense, if it is not interposed on the trial level by answer, it would not be considered on appeal." (*Blackburn,* 187 Ill. App. 3d at 565.) Defendants here, like the defendant in *Blackburn*, made their request for leave to amend too late. The trial court correctly denied defendants' request for instructions not based on the pleadings.

■ Defendants argue that this court should vacate the judgment because the verdict form did not meet the requirements of section 2—1109 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1109), which provides:

"In every case where damages for injury to the person are assessed by the jury the verdict shall be itemized so as to re-

flect the monetary distribution among economic loss and non-economic loss, if any."

Defendants offered no verdict forms, and they did not object to plaintiff's verdict form at the instructions conference or at any other time before the jury returned the verdict. "Failing to tender a proper itemized verdict to the trial court waives review of the issue." (*Wheeler v. Sunbelt Tool Co.* (1989), 181 Ill. App. 3d 1088, 1107, 537 N.E.2d 1332; see *Forrester v. Patrick* (1988), 167 Ill. App. 3d 105, 109, 520 N.E.2d 1188.) The parties must object to an improper verdict form either at the instruction conference or when the form is read to the jury to preserve the issue for review. (*Hitt v. Langel* (1968), 93 Ill. App. 2d 386, 395, 236 N.E.2d 118.) Defendants' objection to the form of the verdict in their post-trial motion came too late to preserve this issue.

Defendants ask this court to review the issue as plain error. This court will consider issues not raised before the trial court "where necessary to ensure a fair trial and protect the judicial process from deterioration." (*Underwood v. Pennsylvania R.R. Co.* (1966), 34 Ill. 2d 367, 371, 215 N.E.2d 236.) Prior to the enactment of the predecessor to section 2—1109, in 1976, juries did not need to itemize their verdicts, yet some trials held then were fair. Accordingly, the courts have found that a verdict form which does not require itemization is not so improper that such error cannot be waived. (See *Wheeler*, 181 Ill. App. 3d at 1107.) We find no plain error.

■ Defendants contend that the verdict is unclear because of the jury's notation under the damage assessment: "(Divided by both brothers $75,000.00)." As this court has held:

"A jury verdict under challenge must be examined toward the end of ascertaining the jury's intention in returning the verdict. If the verdict is supported by the pleadings and evidence, it must be liberally construed and may be molded into form and made to serve, unless it is unclear there is doubt as to its meaning. [Citations.] An amendment is permissible, however, only when the defect is one of form, rather than substance. [Citations.] A trial court should not amend a verdict in order to reach a determination that the court believes the jury ought to have made; an amendment must reflect only what the jury clearly intended the verdict to be." *Anderson v. Smith* (1980), 91 Ill. App. 3d 938, 940-41, 415 N.E.2d 643.

There is no real doubt of the meaning of the jury verdict here. The jury found defendants responsible for total damages of $150,000, and the jury attempted to apportion the damages equally between the

two parties. "[T]he jury may not *** apportion damages between joint tort feasors and assess them severally." (*Michels v. Bezley* (1957), 12 Ill. App. 2d 456, 459, 140 N.E.2d 134.) The attempt at apportionment renders the jury verdict irregular, but the trial court may reject surplusage and mold the verdict into the proper form where the jury's resolution of the issues it was to decide is clear. (*O'Brien v. Palmer* (1868), 49 Ill. 72; see *Baumgartner v. Montavon* (1934), 276 Ill. App. 498, 509-10.) The trial court's judgment puts the jury's verdict into the proper form as a finding of the amount for which each defendant, as a joint tortfeasor, is liable. The trial court properly ignored as surplusage the jury's attempt to decide the allocation of the damages, which was not an issue for the jury to decide.

Finally, defendants argue that the damage award should be set aside or reduced because it is excessive. Punitive damages are appropriate when a tort is committed with deliberate violence. (*Motsch v. Pine Roofing Co.* (1988), 178 Ill. App. 3d 169, 177, 533 N.E.2d 1.) The amount of punitive damages is in the sound discretion of the trier of fact, and a reviewing court will reduce that amount only when it is clearly excessive. (*Hough v. Mooningham* (1986), 139 Ill. App. 3d 1018, 1024, 487 N.E.2d 1281.) "[A]n award becomes excessive only when it is so large that it no longer serves [the] purposes [of punitive damage awards]." *Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 711, 450 N.E.2d 1199.

In *Hazelwood* the court listed three factors which reviewing courts should consider in determining whether punitive damages are excessive: (1) the enormity of the wrong; (2) defendant's financial status; and (3) defendant's potential liability to persons other than plaintiff. (*Hazelwood*, 114 Ill. App. 3d at 712-13.) In *Deal v. Byford* (1989), 127 Ill. 2d 192, 204, 537 N.E.2d 267, our supreme court approved the *Hazelwood* list of factors, emphasizing that the list is not exhaustive and courts should carefully assess each case in light of its specific facts.

■ Here, defendants have no potential liability to others, and the wrongfulness of their wilful violence is substantial. Plaintiff presented no evidence of defendants' finances, but he is not required to present such evidence. (*Deal*, 127 Ill. 2d at 205.) Since defendants failed to present evidence of their finances, they "cannot now complain of its absence." *Deal*, 127 Ill. 2d at 205.

In *Deal*, the defendant's employee got into a fight with plaintiff, one of defendant's tenants, while inspecting her apartment. The jury awarded her total compensatory damages of $1,500, which the court reduced by 15%, the percentage of fault for which the jury found

plaintiff responsible due to her contributory fault in causing the fight. The jury also awarded plaintiff punitive damages of $25,000 despite the absence of evidence of defendant's financial resources. (*Deal*, 127 Ill. 2d at 199.) Our supreme court affirmed the verdict, finding no indication of passion or prejudice. *Deal*, 127 Ill. 2d at 204.

Here, plaintiff's medical costs approached $10,000 and he lost more than $4,000 in wages. He testified to considerable pain and suffering: he had to use a cane to walk for several months after the attack, and almost six years later, at the time of trial, he still suffered frequent headaches, his knee pained him if he sat for extended periods, and his cheek remained very sensitive to cold. The jury may have awarded plaintiff a substantial sum for pain and suffering. Due to the form of the verdict, this court cannot determine accurately what part of the damages the jury awarded as compensation and what part it awarded as punishment. Plaintiff sought more than $80,000 in compensatory damages and $150,000 in punitive damages. Since the jury awarded plaintiff a total of only $150,000, the punitive damage award may have been as little as $70,000. The defendants' conduct here was much more severe than the conduct of the defendant in *Deal*, causing plaintiff far greater injury than Deal suffered, and the jury here, unlike the jury in *Deal*, found plaintiff not contributorily at fault for the injuries. The record does not support a conclusion that the jury acted out of passion or prejudice. We cannot say that the damage award here is excessive.

For the reasons stated above, the judgment of the trial court is affirmed.

Affirmed.

HARTMAN and DiVITO, JJ., concur.