# Illinois Official Reports

## Appellate Court

---

### *Doe v. Parrillo*, 2020 IL App (1st) 191286

---

| | |
|---|---|
| Appellate Court Caption | JANE DOE, Plaintiff-Appellee, v. BEAU PARRILLO, Defendant-Appellant. |
| District & No. | First District, First Division<br>No. 1-19-1286 |
| Filed | September 28, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-L-12247; the Hon. James Michael Varga, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |
| Counsel on Appeal | Ronald F. Neville, Terence J. Mahoney, and Jennifer Mann, of Neville & Mahoney, of Chicago, for appellant.<br><br>Daniel J. Voelker, of Voelker Litigation Group, of Chicago, for appellee. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Presiding Justice Griffin and Justice Walker concurred in the judgment and opinion. |

¶ 1 In every matter, an attorney makes a countless number of choices: some tactical and some inconsequential, some immediate and some prospective, some deliberative and well-informed, and some hasty and ill-informed. Together the combination of choices drives the matter toward resolution. Counsel for defendant chose to let the jury trial proceed without their participation or a court reporter. Unfortunately for the defendant, these and other choices led to a multi-million-dollar verdict. Different choices might have led to a different result. In cases like this case, we do not serve as a safety net for bad choices.

¶ 2 Jane Doe sued Beau Parrillo for allegedly physically and sexually assaulting her. The evening before trial, one of Parrillo's counsel sought a 30-day to 60-day continuance, claiming her mother had a medical emergency and two unnamed witnesses were unavailable. The day of trial she added another basis—an affidavit from Parrillo stating that he had traveled to Florida to be with his ailing father. The trial judge refused to hear the motion under a local rule giving the presiding judge authority over continuances of that length. Although Parrillo's counsel had opportunities to appear before the presiding judge, counsel failed to do so. Trial proceeded without Parrillo and his counsel, though counsel could have appeared. The jury awarded Doe $1 million in compensatory damages and $8 million in punitive damages. After trial, Parrillo admitted that his affidavit contained falsehoods, including that he remained in Chicago during the trial. Nevertheless, he asked the trial court to vacate the judgment and grant him a new trial. The trial court declined.

¶ 3 Parrillo claims the trial court abused its discretion by (i) refusing to rule on his motion for a continuance or allowing him to obtain a ruling from the presiding judge and (ii) conducting a jury trial in Parrillo's absence and without a court reporter. He also asserts that the trial court committed reversible error by (i) conducting a jury instructions conference without his attorney present, (ii) tendering improper jury instructions, (iii) improperly admitting medical records, and (iv) denying his motion for a mistrial. Finally, Parrillo contends that the $9 million award is excessive. Parrillo asks us to vacate the judgment and remand for a new trial.

¶ 4 We find that the court did not abuse its discretion in declining to give Parrillo more time to seek a continuance. Also, the decision to hold the trial in absence of Parrillo and his counsel did not violate Parrillo's due process rights or present grounds for a mistrial because he and his attorneys could have participated but voluntarily declined. Because his attorneys did not participate, Parrillo waived alleged evidentiary errors and errors in the jury instructions. Finally, we reverse the $8 million punitive damages award as excessive and reduce it to $1 million.

¶ 5 BACKGROUND

¶ 6 It is difficult to discern exactly what occurred in this proceeding between January 13, when Parrillo first sought a continuance, and January 15, when the jury entered its verdict. This is due in no small part to the absence of a trial transcript. We rely primarily on the transcript and documents from the posttrial hearing to piece together what transpired.

¶ 7                                   Doe's Complaint

¶ 8          Doe filed her initial five-count complaint on December 15, 2016, alleging that between October 5, 2015, and December 12, 2015, her former boyfriend, Parrillo, assaulted her four times by choking her, striking her with a closed fist in the face and mouth, and hitting her in the head with a glass carafe. She also alleged that on March 23, 2016, Parrillo forcibly restrained her while sexually assaulting her. Doe amended her complaint to request punitive damages in addition to compensatory damages. Parrillo denied all the allegations.

¶ 9                                     January 13

¶ 10         On January 7, 2019, after several years of discovery and delays, the trial court entered an order certifying the case as ready for trial on January 14. Parrillo's attorney, Allison Muth, was present in court and did not object. Then on the eve of trial, she sought to delay it by 30 to 60 days. On January 13 at about 10:50 p.m., Muth attempted to electronically file two motions. The first was the appearance by attorney Robert Holstein, who was retained the day before to assist at trial. The second was an emergency motion for a continuance, which stated in part that (i) Holstein needed additional time to prepare for trial, (ii) two "critical eyewitnesses" were unavailable during the week of January 14, and (iii) Muth's mother was in failing health, and Muth would be unable to adequately prepare for or attend the trial, which was expected to take at least three days. Muth planned to present the motion during the presiding judge's emergency call at 11 a.m. the next morning.

¶ 11                                    January 14

¶ 12         At 10 a.m. on January 14, the assignment judge sent the case to Judge James Varga for trial. Holstein was in the courtroom; Muth was not. Holstein did not step up or inform the assignment judge that Muth intended to ask for a continuance of several weeks. Holstein later said he did not know if his appearance was on file and was unsure of the parties' readiness for trial, though at the time he should have known of Muth's attempt to file the motions the night before.

¶ 13         About an hour later, Muth tried to present her motion for a continuance to the presiding judge. The presiding judge's clerk allegedly told Muth of the case's assignment to Judge Varga and advised her to present the motion to him.

¶ 14         Muth went to Judge Varga's courtroom. She tried to present him with her motion for a continuance; Judge Varga declined to hear it. Judge Varga told Muth that under Cook County Circuit Court General Administrative Order 16-2 (GAO 16-2), after a case has been set for a trial, motions for a continuance may only be heard by the presiding judge for the Law Division. Specifically, GAO 16-2 states, "All motions to continue trial on a case assigned to the Master Calendar Section must be presented to the Presiding Judge of the Law Division or his or her designee on the appropriate Courtroom 2005 motion call." Cook County Cir. Ct. Gen. Admin. Order 16-2 (Apr. 1, 2016). Judge Varga also informed Muth that her motion was not on file and recessed until 1:30 p.m. to allow her to determine the status of the motion.

¶ 15                          Revised Motion for Continuance

¶ 16         Muth went to the clerk's office and learned that the motion for a continuance and Holstein's appearance, which she attempted to e-file the night before, had been rejected because she

erroneously checked a "confidential" box. (The record, however, indicates Holstein's appearance was filed at 12 a.m. on January 14.) Muth refiled Holstein's appearance and filed a revised emergency motion for a continuance. The new motion again cited Muth's mother's health issues, the unavailability of two eyewitness, and Holstein's unpreparedness for trial. But the motion now included the "fact" Parrillo had flown to Florida that morning to be with his ill father and was unavailable for trial.

¶ 17    Muth attached two affidavits to the motion. Her own affidavit stated that her mother was in critically poor health, she and her brother were the primary caregivers, her brother was unavailable, and she would not be able to return full time to her law practice for a few weeks.

¶ 18    The second affidavit, from Parrillo and dated January 14, stated that (i) he received a call at about 10:30 p.m. on January 13, informing him that his father had been hospitalized in Florida, (ii) he took an 8:20 a.m. flight to Florida on January 14, (iii) he informed his attorney that morning and asked her to request a continuance, and (iv) he would return to Chicago as soon as possible to attend the trial. (Parrillo would later acknowledge he lied in his affidavit; he had not flown to Florida and was in Chicago all week.)

¶ 19    Muth tried to present her revised emergency motion to the presiding judge, but his courtroom was closed for lunch. So, she returned to Judge Varga's courtroom at 1:30 p.m. and asked him to rule on the motion. Judge Varga again declined, citing GAO 16-2.

¶ 20    Doe's attorney made an oral motion for default. Judge Varga denied the motion without prejudice. But rather than begin jury selection, Judge Varga continued the case until the following morning, telling the attorneys that he would start jury selection at 9:30 a.m. and break at 11 a.m. so Muth could present her motion for a continuance to the presiding judge. Muth agreed.

¶ 21                                                    January 15

¶ 22    Judge Varga convened court at 9:30 a.m. on January 15. Holstein was in the courtroom; Muth was not. According to an affidavit from Muth's mother, which was filed with a posttrial motion for a new trial, Muth was with her mother that morning. Muth's mother stated that she was having shortness of breath, felt anxious, and could not sleep. Although she lived with her son, she said he worked nights and was sleeping. So, she texted Muth and asked her to come over. Muth helped her use her nebulizer and CPAP machine and verbally calmed her down. Muth stayed until 10:15 a.m., when her brother woke up and her mother was no longer in crisis. Muth says she tried to call Holstein, the trial court, and the Office of the Cook County Clerk to alert the court she would be late that morning, but no one answered.

¶ 23    Back in Judge Varga's courtroom, Holstein told the judge he had not spoken to Muth, but she would be presenting her motion for a continuance to the presiding judge at 11 a.m. Judge Varga asked Holstein if he intended to participate in the trial; Holstein declined, saying he was unfamiliar with Parrillo and the facts and did not want to jeopardize the pending motion for a continuance. Holstein then left the courtroom. After waiting for Muth until 10 a.m., Judge Varga began jury selection.

¶ 24    Because Muth was allegedly with her mother that morning, she missed jury selection as well as the presiding judge's 11 a.m. emergency call. When Muth arrived at 11:30 a.m., the presiding judge's clerk told her she was too late but could present the motion for a continuance the next day.

¶ 25 Muth then went to Judge Varga's courtroom and saw that the trial had started and that Doe was testifying. Throughout the trial, Muth and Holstein stood in the hallway and walked in and out of the courtroom several times but did not participate in the trial. Muth eventually left the courthouse and went to her office to prepare a motion for mistrial. When she returned, Judge Varga and Doe's attorneys were discussing jury instructions. Muth claims Judge Varga would not allow her and Holstein to participate in the jury instructions conference. While the jury deliberated, Muth presented her motion for a mistrial, citing her mother's poor health and Parrillo's right to be present at the trial. (We note that at least a day and a half had passed since Muth allegedly found out that Parrillo had gone to Florida, which would be revealed as an intentional falsehood. We do not know whether she had communications with her client after their initial conversation on Monday morning and the filing of the motion for a mistrial on Tuesday afternoon.) Judge Varga denied the motion.

¶ 26 No court reporter was present, so we have no transcript of the proceedings. The record reflects, however, that Doe was the only witness and exhibits admitted into evidence included Doe's medical records, photographs of her injuries, and Parrillo's text messages to Doe. The jury returned a verdict for Doe, awarding $1 million in compensatory damages for pain and suffering, loss of present and future normal life, and present and future emotional distress. The jury also awarded $8 million in punitive damages.

¶ 27 Posttrial Hearing

¶ 28 Parrillo filed a post-trial motion to vacate the judgment and grant a new trial, arguing the trial court (i) abused its discretion by not ruling on his emergency motion for a continuance or allowing more than two opportunities to obtain a ruling from the presiding judge, (ii) improperly conducted a jury trial with neither him nor his attorneys present, (iii) gave improper and prejudicial jury instructions and failed to conduct an appropriate jury instructions conference, (iv) improperly admitted exhibits into evidence, and (v) failed to protect his rights and the integrity of the judicial process by conducting the trial without a court reporter. Parrillo also alleged that the jury's compensatory and punitive damages awards were excessive. Parrillo argued, in part, that although GAO 16-2 states that motions to continue must be presented to the presiding judge, it also grants a trial judge discretion "to enter an order the Judge feels is appropriate." Cook County Cir. Ct. Gen. Admin. Order 16-2 (Apr. 1, 2016). Thus, Parrillo argued, Judge Varga had discretion to continue the case and abused his discretion by refusing to hear the motion.

¶ 29 Parrillo attached multiple exhibits to his motion, including affidavits from Muth's mother and Parrillo's father explaining their health problems and copies of his father's medical records, rather than affidavits from their physicians. Parrillo also filed a motion to substitute his pretrial affidavit, stating that he was in Chicago when the trial began, that his stress about his father's health caused him to falsely tell his attorney he was in Florida, that he never read the prior affidavit, and that his assistant signed it electronically.

¶ 30 After a hearing, Judge Varga denied the posttrial motion. First, on the motion for a continuance, Judge Varga noted (i) Parrillo lied in his affidavit, falsely stating he was in Florida when he was in Illinois, (ii) the motion lacked affidavits from physicians regarding the health of Parrillo's father and Muth's mother, and (iii) despite two days to do so, the motion had not been presented to the presiding judge. Judge Varga rejected Parrillo's argument that he could have ruled on the motion for a continuance, stating that although section IX of GAO 16-2 gives

trial judges some discretion to enter orders, it is a "general boilerplate statement to appease full circuit judges." He said a trial judge can hold a case for a day or two, but only the presiding judge may grant a continuance of as much as 30 to 60 days.

¶ 31    Regarding the trial, Judge Varga stated that Holstein could have participated in jury selection and that he and Muth could have participated in the trial. Instead, they stayed in the hallway looking in through the glass doors. He concluded that Parrillo and his attorneys had "abandoned" the trial.

¶ 32    Judge Varga determined that the jury instructions properly stated the law, were not confusing or prejudicial to Parrillo, complied with Illinois Supreme Court Rule 239 (eff. Apr. 8, 2013), and that contributory negligence and affirmative defenses were not included because Parrillo presented no evidence to support them. Judge Varga also rejected claims that the jury instruction conference should have included Parrillo's counsel on the ground that they had abandoned the trial.

¶ 33    As for damages, Judge Varga found Doe's testimony of physical and mental abuse and especially sexual assault severe enough for the jurors to award future damages without testimony from an expert. He also found the compensatory damages award to be reasonable and the punitive damages award to reflect the reprehensibility of Parrillo's misconduct and the harm Doe suffered, namely "being sexually assaulted and physically and mentally abused." Judge Varga ruled (i) any errors in admitting the medical records were harmless, and (ii) the parties, not the court, shoulder the responsibility for ensuring the presence of a court reporter.

¶ 34                                    ANALYSIS

¶ 35    As a preliminary matter, we address Parrillo's contention that comments Judge Varga made in the posttrial hearing indicate favoritism toward Doe and bias against him, making a fair judgment impossible. Parrillo cites statements he claims show hostility toward him and his attorneys and indignation about his attorneys' suggestions that the judge erred or abused his discretion.

¶ 36    Judges are presumed impartial. The party making the charge bears the burden of overcoming the presumption by showing prejudicial trial conduct or personal bias. *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 31 (citing *Eychaner v. Gross*, 202 Ill. 2d 228, 280 (2002)). "[W]hile most bias charges stemming from conduct during trial do not support a finding of actual prejudice, there may be some cases in which the antagonism is so high that it rises to the level of actual prejudice." *Id.* Our supreme court has held that judicial remarks during a trial that are " 'critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.' " (Emphases in original.) *Eychaner*, 202 Ill. 2d at 281 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Assessment of a party based on evidence presented during proceedings negates deep-seated favoritism or antagonism. *In re Estate of Wilson*, 238 Ill. 2d 519, 555 (2010); *Calabrese v. Benitez*, 2015 IL App (3d) 130827, ¶ 26.

¶ 37    During the posttrial hearing, Judge Varga gave an account of facts: (i) Parrillo tried to deceive the court when he submitted the original affidavit, (ii) his counsel bungled the filing of the motion for a continuance, and (iii) his counsel chose not to participate in the trial, despite the ability and the opportunity to do so. Rather than hostility, Judge Varga's comments indicate

displeasure with defense counsel's choice of waiving participation at trial. Expressions of displeasure or irritation do not necessarily indicate judicial bias against a party or their counsel. *Antonacci v. Seyfarth Shaw, LLP*, 2015 IL App (1st) 142372, ¶ 39. In *Antonacci*, the trial court properly dismissed a claim of bias where the judge displayed frustration with the petitioner's attempt to submit a surreply one day before a hearing. *Id.* Similarly, Judge Varga's comments, which we have closely reviewed, stem from frustration with the defense's behavior rather than indicating deep-seated favoritism or antagonism. Indeed, Judge Varga's comments came after trial, and, thus, could not have prejudiced the defense during trial. See *Calabrese*, 2015 IL App (3d) 130827, ¶ 26 (judge's comments during posttrial hearing, based on facts, did not entitle defendant to new trial).

¶ 38                                       Motion for a Continuance

¶ 39         Parrillo contends that the trial court abused its discretion in refusing to hear and rule on his motion for a continuance or give him additional time to present the motion to the presiding judge. Continuances are within the sound discretion of the trial court. *K&K Iron Works, Inc. v. Marc Realty, LLC*, 2014 IL App (1st) 133688, ¶ 22; *In re Marriage of Ward*, 282 Ill. App. 3d 423, 430 (1996). The decision to grant or deny a trial continuance will not be disturbed on appeal "unless it has resulted in a palpable injustice or constitutes a manifest abuse of discretion." *Wine v. Bauerfreund*, 155 Ill. App. 3d 19, 22 (1987). To demonstrate an abuse of discretion, the decision must be arbitrary, fanciful, or unreasonable or a decision no reasonable person would make. *Roach v. Union Pacific R.R.*, 2014 IL App (1st) 132015, ¶ 20.

¶ 40         Section 2-1007 of the Code of Civil Procedure states that the court has the discretion to grant additional time for "the doing of any act or the taking of any step or proceeding prior to judgment" on good cause shown. 735 ILCS 5/2-1007 (West 2018). Further, the "circumstances, terms and conditions under which continuances may be granted, the time and manner in which application therefor shall be made, and the effect thereof, shall be according to rules." *Id.* Illinois Supreme Court Rule 231(f) (eff. Jan. 1, 1970) states, "[n]o motion for the continuance of a cause made after the cause has been reached for trial shall be heard, unless a sufficient excuse is shown for the delay." Once the case reaches the trial stage, the party seeking a continuance must provide the court with "especially grave reasons" for the continuance because of the potential inconvenience to the witnesses, the parties, and the court. *In re Marriage of Ward*, 282 Ill. App. 3d at 430-31.

¶ 41         The record establishes that Parrillo's counsel had multiple opportunities to present a motion for a continuance and repeatedly stumbled. Muth was in court on January 7, 2019, when the case was assigned a trial date. Muth did not ask for a continuance, though her mother's affidavit indicates she had already been hospitalized and may have required more assistance than usual. Knowing of her mother's condition and her brother's schedule, Muth could have said something. More significantly, Muth and Holstein, between January 13 and January 15, had plenty of time to present the motion to the presiding judge, especially as an "emergency motion." Muth filed an emergency motion late on January 13, and had she followed proper procedure, the motion would have been heard. Yet, Holstein sat in the courtroom that morning as the case was assigned to Judge Varga. Holstein could have alerted the court that Muth had filed an emergency motion for a substantial delay. Holstein knew Muth wanted a continuance, and as an experienced attorney, he should have brought this to the court's attention.

¶ 42    Rather than proceed with the trial, Judge Varga continued the trial by recessing until the next day, giving Parrillo's counsel another opportunity to present the emergency motion. Once again, counsel apparently slipped up; Muth claims she missed the presiding judge's emergency motion call because she was with her mother. While we are sympathetic to family health emergencies, Muth could have made other arrangements to ensure timely presentation of the motion by, for instance, asking Holstein, retained as second chair, to present the motion or by making arrangements with her brother to be on call on January 13 and 14 due to the impending trial. Indeed, Muth's attorney acknowledged during oral argument that Holstein could have presented the motion for a continuance to the presiding judge.

¶ 43    Judge Varga advised Parrillo's counsel that under GAO 16-2 only the presiding judge could grant a trial continuance of the length sought by Parrillo's counsel. Parrillo contends, however, that the trial judge had discretion to continue the case for a few days or to give his attorneys a third chance to present the motion to the presiding judge. Nothing in the record shows that Parrillo's counsel ever asked Judge Varga for a continuance of a day or two; they insisted on a 30-day to 60-day continuance, which only the presiding judge could grant. Judge Varga continued the trial for a day to give them another opportunity to present their motion to the presiding judge. Though section IX of GAO 16-2 grants Judge Varga discretion "to enter an order [he] feels is appropriate" under these circumstances, a reasonable person could take the same view as Judge Varga and proceed with the trial. See Cook County Cir. Ct. Gen. Admin. Order 16-2 (Apr. 1, 2016).

¶ 44    Counsel's availability, a factor to consider in deciding a motion for a continuance, does not cede a party the right to a continuance. *K&K Iron Works*, 2014 IL App (1st) 133688, ¶ 33 (citing *Thomas v. Thomas*, 23 Ill. App. 3d 936 (1974)). This is particularly so when more than one attorney represents the party. *Lipke v. Celotex Corp.*, 153 Ill. App. 3d 498, 510 (1987). Holstein, a lawyer since 1962, claimed to be unprepared for trial because he had not met Parrillo. But an attorney can represent a client without meeting him or her. Once Holstein agreed to represent Parrillo, he had a duty to both Parrillo and the court to provide his professional services and represent the client competently. See Ill. State Bar Ass'n, *ISBA Advisory Opinion on Professional Conduct*, Op. No. 85-6 (Dec. 6, 1985), https://www.isba.org/sites/default/files/ethicsopinions/85-06.pdf [https://perma.cc/S6AN-YFZ7]. Holstein carried an equal responsibility with Muth in presenting the motion for continuance, covering the jury selection, and attending the trial. Parrillo's attorneys mishandled the situation multiple times. Judge Varga did not abuse his discretion in declining them a third opportunity to file their motion.

¶ 45                                        Due Process

¶ 46    Parrillo contends the trial court violated his due process rights by conducting a trial in his absence, which prevented him from presenting a defense.

¶ 47    As an initial matter, we note that a defendant's absence in a civil trial does not raise a due process violation or alone provide a basis for reversing a jury's verdict. If adequate notice has been given, a civil jury trial may proceed without the party or counsel, and the present party may prove its claim as if the opposition had been there. See *In re Marriage of Garde*, 118 Ill. App. 3d 303, 307 (1983); see also *City of Joliet v. Szayna*, 2016 IL App (3d) 150092, ¶ 47 ("The procedure for entry of an *ex parte* judgment is to hold a trial in the party's absence and require the opposing party to present evidence to prove their claim."); *In re Marriage of*

*Harnack*, 2014 IL App (1st) 121424 (holding, unreasonable to vacate judgment where any alleged errors or injustices due solely to movant's failure to participate).

¶ 48 In *Garde*, the defendant and his counsel received proper notice of trial, though neither appeared. 118 Ill. App. 3d at 306. The plaintiff proceeded to testify and provide evidence, and the trial court entered judgment. *Id.* at 305. The appellate court characterized this judgment as "a judgment on the merits entered after an *ex parte* hearing" and not a default judgment. *Id.* at 307. Without a report of the proceedings, the appellate court assumed that the trial court heard adequate evidence to support its judgment. *Id.* at 308. In considering a motion to vacate the judgment, the court's primary concern was whether substantial justice had been done, including consideration of movant's due diligence. *Id.* The appellate court affirmed the judgment, finding the defendant had his day in court, but ignored it, and the trial court acted fairly. *Id.*

¶ 49 Likewise, Parrillo and his counsel received proper notice of trial, appeared before Judge Varga, and walked in and out of the courtroom during the trial. They chose to abdicate their role. Holstein attended the start of jury selection. And, after the trial started, Parrillo's attorneys entered and left the courtroom and could be seen by Judge Varga in the hallway. They could have cross-examined Doe, presented evidence, and attended the jury instruction conference. Instead, they decided to pin their client's case on a motion for a mistrial.

¶ 50 Maybe impulsively, maybe imprudently, but just the same, Parrillo's counsel made a definite and voluntary choice by "abandoning" the trial, as Judge Varga characterized it, and taking their chances first with a motion for a mistrial and then with an appeal. "Attorneys have a legal and ethical duty to act with reasonable diligence in representing their client's interests." *Tiller v. Semonis*, 263 Ill. App. 3d 653, 657 (1994). Of special significance here, contrary to what Parrillo said in his affidavit the day of trial, he was in Illinois, not Florida, and never gave a single reason for his falsehoods or his absence. The failure to present a defense lays squarely on Parrillo and his attorneys. Had Parrillo's attorneys participated in the trial, they would be in a better position to know what testimony and exhibits Doe presented, the basis for the jury instructions, and the arguments Doe made on damages.

¶ 51 Considering the total lack of diligence by Parrillo and his counsel, Judge Varga acted well within his discretion. All alleged errors involve choices made by counsel and Parrillo. Counsel refused to participate in jury selection or trial or to take steps to properly present the motion for a continuance to the presiding judge. Parrillo filed an untruthful affidavit. Together, this appears more like a tactic to secure a continuance than a series of unfortunate events. We do not know when Parrillo learned of his counsel's refusal to participate in the trial and decision to walk away and take their chances. Either Parrillo chose to rely on (and perhaps participate in) his attorneys' decision or laid low to conceal his falsehoods. Ultimately, Parrillo shares responsibility for his counsel's choices.

¶ 52 Court Reporter

¶ 53 Parrillo asserts that once Judge Varga decided to proceed with the trial, he should have required Doe to retain a court reporter. He argues that, without a trial transcript, he has no way to analyze the evidence or show that the trial court made errors that warrant reversal. Also, he suggests that Judge Varga should have granted his request for his trial notes so he could know the substance of Doe's testimony.

¶ 54 Parrillo does not cite, nor could we find, a case holding that a trial judge must ensure attendance of a court reporter at trial. Courts consistently have held that even a self-represented appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

¶ 55 Without a trial record, we assume the trial court acted in conformity with the law and had sufficient evidence to support its judgment. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 157 (2005); *Webster v. Hartman*, 195 Ill. 2d 426, 432-34 (2001) (affirming appellate court's holding that where basis for trial court's decision is unknown, a reviewing court presumes adequate evidence and conformity with law); *Foutch*, 99 Ill. 2d at 391; *Gataric v. Colak*, 2016 IL App (1st) 151281, ¶¶ 30-31 (there is a presumption that the trial court heard adequate evidence for decision where there is no transcript and no findings of fact). Any deficiency in the record on appeal falls squarely on Parrillo, as the appellant, not on Doe and not the trial judge.

¶ 56 Had Parrillo made a record of the proceedings, not only would we know what happened at the trial, but we could assess his argument that the trial judge erred in declining to hear his motion for a continuance. We only have his attorney's assertion that the trial judge acted improperly and, rather than doctor affidavits, allowed affidavits from Muth's mother and Parrillo's father regarding their health, all of which provide insufficient grounds for reversing the judgment.

¶ 57 Although Doe's attorney wrote Parrillo's counsel, advising she "intended" to have a court reporter present and asking Parrillo to split the cost, whether Parrillo's counsel replied, let alone agreed, we do not know. The letter does not absolve Parrillo of his burden of providing an adequate record for this appeal.

¶ 58 Even without a court reporter, Parrillo could have attempted to compile a bystander report under Illinois Supreme Court Rule 323(c) (eff. July 1, 2017). Had his attorneys attended the proceedings, they may have been able to prepare and propose a report, which could have been certified and included in the record on appeal.

¶ 59 Moreover, Parrillo has no basis to expect that he and his counsel could refuse to appear at trial and then access Judge Varga's notes on the proceedings, as Parrillo suggests. Just as a trial court is not responsible for providing a court reporter, we have found no case law indicating that a trial judge must provide access to his or her trial notes. In addition, once Parrillo's counsel knew the trial was proceeding, they could have hired a court reporter to hurry over to court. Ultimately, the lack of adequate record on appeal rests solely on the defense.

¶ 60                                    Jury Instructions

¶ 61 Parrillo contends that the trial court erred by (i) holding a jury instruction conference without allowing his attorneys to participate and (ii) issuing improper instructions to the jury.

¶ 62 A trial court has discretion to determine the appropriate jury instructions, and its determination will be reversed only for an abuse of discretion. *In re Timothy H.*, 301 Ill. App. 3d 1008, 1015 (1998). A litigant waives the right to object on appeal to instructions or verdict forms by failing to make a specific objection during the jury instruction conference or when the form is read to the jury. *Marek v. Stepkowski*, 241 Ill. App. 3d 862, 870 (1992). Additionally, even if the litigant properly objects to an instruction or verdict form, the litigant still must submit a remedial instruction or verdict form. See *id.* Timely objection and

submission help the trial court correct the problem and prohibit the challenging party from gaining an advantage by obtaining reversal based on the party's own failure to act. *Morus v. Kapusta*, 339 Ill. App. 3d 483, 489 (2003). " 'Enlightened trial practice does not permit counsel under the guise of trial strategy to sit idly by and permit instructions to be given the jury without specific objections and then be given the advantage of predicating error thereon by urging the error for the first time in a post-trial motion ***.' " *Allen v. Howard Bowl, Inc.*, 61 Ill. App. 2d 314, 317 (1965) (quoting *Onderisin v. Elgin, Joliet & Eastern Ry. Co.*, 20 Ill. App. 2d 73, 78 (1959)). In his order denying Parrillo's posttrial motion, the trial court stated, "The defense made no objection and tendered no jury instructions. The defense waived all evidentiary rulings by the trial court and jury instructions given by the court." Absent a specific objection during the jury instruction conference or the tender of a remedial instruction, the issue is waived.

¶ 63        Parrillo contends that Judge Varga prevented his attorneys from participating in the jury instructions conference. An appellant has the burden to present a sufficient record to support a claim of error. *Webster*, 195 Ill. 2d at 432 (citing *Foutch*, 99 Ill. 2d at 391-92). Strictly speaking, "[f]rom the very nature of an appeal it is evident that the court of review must have before it the record to review in order to determine whether there was the error claimed by the appellant." *Foutch*, 99 Ill. 2d at 391. Review requires a report or record of the proceeding where the issue relates to the conduct at a hearing or proceeding. *Webster*, 195 Ill. 2d at 432. Without that record, we presume that the ruling conforms to the law and has a sufficient factual basis. *Foutch*, 99 Ill. 2d at 391-92. "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Id.* at 392. Absent a transcript showing that the trial court prohibited Parrillo's attorneys from participating in the jury instruction conference, no basis exists for finding that the trial court abused its discretion. See *id.*

¶ 64                                Compensatory Damages

¶ 65        Parrillo argues that the jury's compensatory damages award of $1 million—$200,000 each for pain and suffering, present and future loss of normal life, and present and future infliction of emotional distress—is excessive.

¶ 66        Generally, the amount of a verdict is at the discretion of the jury. *Dahan v. UHS of Bethesda, Inc.*, 295 Ill. App. 3d 770, 781 (1998). The trier of fact determines the question of damages, and "a reviewing court will not lightly substitute its opinion for the judgment rendered in the trial court." *Richardson v. Chapman*, 175 Ill. 2d 98, 113 (1997); *Klingelhoets v. Charlton-Perrin*, 2013 IL App (1st) 112412, ¶ 67. A court will order a remittitur or, if the plaintiff does not consent, a new trial should a verdict be determined excessive. *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 412-13 (1997). In *Richardson*, the supreme court listed factors for viewing an award as excessive: (i) exceeding the range of fair and reasonable compensation, (ii) result of passion or prejudice, or (iii) so large it shocks the judicial conscience. *Richardson*, 175 Ill. 2d at 113. Remittitur will not be ordered when an award " 'falls within the flexible range of conclusions which can reasonably be supported by the facts.' " *Best*, 179 Ill. 2d at 412 (quoting *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 470 (1992)). When reviewing an award of compensatory damages for nonfatal injuries, a court may consider, among other things, "the permanency of the plaintiff's condition, the possibility of future deterioration, the extent of the plaintiff's medical expenses, and the restrictions imposed on the plaintiff by the injuries." *Richardson*, 175 Ill. 2d at 113-14.

¶ 67      Parrillo contends that $200,000 for pain and suffering is excessive, relying on *Richardson*. There, the jury awarded $100,000 for pain and suffering to a plaintiff who got facial lacerations in a car accident. The Illinois Supreme Court found the award excessive and reduced it by half, noting that the laceration on the plaintiff's forehead eventually healed, with only minimal scarring. *Id.* at 114-15. Parrillo argues that, like the plaintiff in *Richardson*, the medical records indicate Doe suffered a minor facial injury, with no evidence of a fracture or scarring, and that $200,000—twice the award in *Richardson*—is excessive.

¶ 68      We disagree. Decided nearly 25 years ago, in *Richardson*, the plaintiff's injuries occurred when defendant's car rear-ended the car in which plaintiff was a passenger. This vastly differs from the injuries Doe suffered. As the trial court observed, Doe testified Parrillo "physically and mentally and sexually assaulted" her. Even if Doe's visible injuries were comparable to the plaintiff's in *Richardson*, a questionable contention given photos in the record showing significant bruising on her face and elsewhere, Doe, unlike the plaintiff in *Richardson*, was sexually assaulted. Based on the record, an award of $200,000 does not shock the judicial conscience and is reasonable.

¶ 69      Parrillo also argues that the "evidence offered to support plaintiff's claim for pain and suffering was comprised solely of the plaintiff's unchallenged, non-cross examined, self-serving testimony." While true, that was the fault of his counsel, who did not participate in the trial or offer any counter evidence.

¶ 70      Next, Parrillo argues that the jury award of $400,000 for present and future loss of normal life and present and future emotional distress was excessive and without evidentiary support. Specifically, Parrillo argues that Doe failed to present corroborating expert testimony to support her claim for future loss of normal life damages. Parrillo cites no cases, and we were unable to find any, holding that those damages must be supported by corroborating expert testimony. As Parrillo notes, no trial record shows the testimony that was offered regarding present and future loss of normal life. The jury saw, without objection, photos of Doe's injuries and Parrillo's text messages threatening Doe and admitting he choked her. Based on this evidence, we cannot say that the amount awarded exceeded the range of fair and reasonable compensation or was so large as to shock the judicial conscience. *Id.* at 113.

¶ 71      We also reject Parrillo's argument that Doe failed to present sufficient evidence to support a claim for infliction of emotional distress and that the jury's award of $400,000 was excessive. Parrillo again complains of the absence of a court reporter; without a trial transcript, he cannot know all of the testimony and evidence presented to support this claim. Nor can we. Based on the evidence in the record, we cannot say the amount awarded exceeded the range of fair and reasonable compensation or was so large as to shock the judicial conscience. *Id.* While slim, the record contains evidentiary support for the jury's verdict and the award.

¶ 72                              Punitive Damages

¶ 73      Parrillo contends the jury's finding that he acted willfully and maliciously, as required for a punitive damages award, was against the manifest weight of the evidence. He also argues that the punitive damages award of $8 million was excessive.

¶ 74      Punitive damages have punishment and deterrence as their aim, not compensation. Punitive damages are available only in cases where the wrongful act complained of is characterized by wantonness, malice, oppression, willfulness, or other circumstances of aggravation. *Cruthis v. Firstar Bank, N.A.*, 354 Ill. App. 3d 1122, 1133 (2004). Because of their penal nature, punitive

damages are not favored in the law, and courts must be cautious in seeing that they are properly and wisely awarded. *Id.* at 1131. While the question of awarding punitive damages for a particular cause of action is a matter of law, the jury decides the question of whether defendant's conduct was sufficiently willful or wanton to justify the imposition of punitive damages. *Cirrincione v. Johnson*, 184 Ill. 2d 109, 116 (1998). We review this factual finding under a manifest weight standard. *Id.* To be against the manifest weight of the evidence, the opposite conclusion of the finding must be clearly evident or the finding itself must be unreasonable, arbitrary, or not based on the evidence. *Best v. Best*, 223 Ill. 2d 342, 350 (2006).

¶ 75    Parrillo contends that because he did not present a defense at trial and the jury only heard from Doe, the jury lacked sufficient evidence to determine whether punitive damages were warranted. As noted, a trial transcript is not available, but the record shows the jury heard from Doe and was shown pictures of her injuries and text messages from Parrillo, admitting that he choked Doe and threatening to harm her. Also, Doe's medical records from a visit to the emergency room were admitted into evidence. Again, the fault for a lack of a defense lies with Parrillo and his counsel. The jury's finding that punitive damages were warranted based on the evidence it heard was not against the manifest weight of the evidence.

¶ 76    Parrillo also argues that the $8 million punitive damages award was excessive under the federal due process standard. Punitive damages are appropriate when a tort is committed with " 'fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others.' " *Doe v. Catholic Bishop of Chicago*, 2017 IL App (1st) 162388, ¶ 9 (quoting *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 186 (1978)). A reviewing court may reduce the amount of punitive damages when it is clearly excessive. *Hough v. Mooningham*, 139 Ill. App. 3d 1018, 1024 (1986). An award of punitive damages becomes excessive when it is so large that it no longer serves the purposes of acting as retribution against the defendant and a deterrent against the defendant and others. *Hazelwood v. Illinois Central Gulf R.R.*, 114 Ill. App. 3d 703, 711 (1983).

¶ 77    The due process clause of the fourteenth amendment prohibits imposing a grossly excessive or arbitrary punishment on a tortfeasor, as the award would serve no legitimate purpose and constitute an arbitrary deprivation of property. *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 416-17 (2003). The United States Supreme Court developed three guideposts to determine whether a jury's award of punitive damages comports with due process: (i) the degree of reprehensibility of the conduct, (ii) the disparity between the harm or potential harm suffered by the plaintiff and the amount of punitive damages awarded, and (iii) the difference between the punitive damages awarded and the civil penalties authorized or imposed in comparable cases. *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574-75 (1996). We apply a *de novo* standard of review to those factors to ensure the punitive damages award turns on the " 'application of law, rather than a decisionmaker's caprice.' " *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 436 (2001) (quoting *Gore*, 517 U.S. at 587 (Breyer, J., concurring, joined by O'Connor and Souter, JJ.)).

¶ 78    The United States Supreme Court considers the degree of reprehensibility of the defendant's conduct the most important factor. *Gore*, 517 U.S. at 575. In evaluating reprehensibility, the Court has instructed us to consider whether (i) the harm caused was physical as opposed to economic, (ii) the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others, (iii) the target of the conduct had financial vulnerability, (iv) the conduct involved repeated actions or was an isolated incident, and (v) the

harm was the result of intentional malice, trickery, or deceit, or mere accident. *Campbell*, 538 U.S. at 419. The existence of only one of these factors weighing in the plaintiff's favor may be insufficient to sustain a punitive damage award, and the existence of none of these factors in the plaintiff's favor would render the award suspect. *Id.*

¶ 79    Parrillo contends it is impossible to assess the reprehensibility of his conduct in the absence of a trial record or presentation of a defense. We disagree. As noted, the appellate record includes pictures of Doe's injuries, her medical records, and threatening text messages Parrillo sent to Doe. Further, Doe alleged that Parrillo physically assaulted her four different times and sexually assaulted her. The harm to Doe was physical, was not a mere accident or an isolated incident (*id.*), and was sufficiently reprehensible to warrant punitive damages.

¶ 80    Under the second *Gore* factor, the court compared the ratio between the actual harm to the plaintiff and the punitive damages award. *Blount v. Stroud*, 395 Ill. App. 3d 8, 26 (2009). This court has recognized that " 'an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety,' and that 'few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.' " *Id.* (quoting *Campbell*, 538 U.S. at 425); see *id.* at 29 (the court found that a ratio of 1.8 to 1, after taking the attorney fees award into account, was not excessive).

¶ 81    Parrillo correctly states that our supreme court has said the best way to determine whether the appropriateness of the ratio between the compensatory damages award and the punitive damages award is to compare it to awards in similar cases. *International Union of Operating Engineers Local No. 150 v. Lowe Excavating Co.*, 225 Ill. 2d 456, 487 (2006). But Parrillo cites just one case, *Fall v. Indiana University Board of Trustees*, 33 F. Supp. 2d 729 (N.D. Ind. 1998), which does little to support his argument. In *Fall*, which involved federal gender discrimination and state law sexual assault and battery, the district court found that the jury's punitive damages award of $800,000 was excessive and offered the plaintiff the option of accepting $50,000 or vacating the award and holding a new trial. The court looked at numerous factors, including that the ratio between compensatory damages of $5157 to punitive damages was 155 to 1. The award of $50,000 would lower the ratio to about 10 to 1. Here, the ratio between compensatory and punitive damages was 8 to 1, far less than what was found reasonable in *Fall*.

¶ 82    The final factor in the *Gore* analysis involves the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. Parrillo's conduct is not subject to civil penalties, but Parrillo argues that this factor weighs in favor of finding that the jury's punitive damages award of $8 million is excessive because if tried criminally, the maximum fine would have been $35,000 ($2500 for each misdemeanor domestic battery violation under section 5-4.5-55(e) of the Unified Code of Corrections (730 ILCS 5/5-4.5-55(e) (West 2018)) and $25,000 for the criminal sexual assault violation under section 5-4.5-30(e) of the Unified Code of Corrections (*id.* §§ 5-4.5-30(e), 5-4.5-50(b)).

¶ 83    This argument is legally unsound. Had Parrillo been charged and convicted criminally, he likely could have been sentenced to a prison term of 4 to 15 years for the criminal sexual assault violation alone. That his criminal fine would be far less than $8 million is of no consequence, as the prison term would serve as the primary punishment.

¶ 84    Parrillo's failure to present a compelling argument for reducing the amount of punitive damages, however, does not prevent us from considering whether a lesser amount would

achieve the goals of punishment and deterrence, without stepping over the line of constitutional impropriety. In *Blount*, the court stated, an award of four times the amount of compensatory damages falls close to that line. *Blount*, 395 Ill. App. 3d at 26. The jury's award of twice that amount steps over that line. Without in any way diminishing the harm Doe suffered at Parrillo's hands, a punitive damages award of $1 million satisfies due process while also sending a strong message to Parrillo and others that this conduct is reprehensible and condemned in the strongest terms. So, we reverse the $8 million punitive damages award and reduce it to $1 million, for a total of $2 million in damages. *Lowe Excavating Co. v. International Union of Operating Engineers Local No. 150*, 358 Ill. App. 3d 1034, 1045 (2005) (reducing punitive damages award from $525,000 to $325,000), *rev'd on other grounds by Lowe*, 225 Ill. 2d at 490-91.

¶ 85                                                    Medical Records

¶ 86         Parrillo contends that the trial court should not have admitted Doe's medical records into evidence to support her claim for damages because they lacked proper foundation and were unfairly prejudicial. Preserving a question for review requires an appropriate objection in the trial court. *Addis v. Exelon Generation Co.*, 378 Ill. App. 3d 781, 795 (2007). Failure to object constitutes a waiver of the issue on review. *Id.* Parrillo failed to raise an objection to the admission of Doe's medical records during the trial. He waived the issue.

¶ 87                                                       Mistrial

¶ 88         Parrillo asserts that the trial court erred in denying his motion for a mistrial because his due process rights were violated by holding a trial in his absence.

¶ 89         Whether to declare a mistrial rests in the trial court's sound discretion and will not be reversed absent abuse of discretion. *Maple v. Gustafson*, 151 Ill. 2d 445, 455 (1992). "A mistrial should be declared only as the result of some occurrence of such character and magnitude that a party is deprived of its right to a fair trial, and the moving party must demonstrate actual prejudice as a result of the ruling or occurrence." *Baker v. CSX Transportation, Inc.*, 221 Ill. App. 3d 121, 138 (1991).

¶ 90         As noted, the failure to have the motion for a continuance heard by the presiding judge was the fault of Parrillo's counsel. Further, one of the primary grounds for the continuance—that Parrillo had gone to Florida for a visit his father—was false. Then, when the trial began, Parrillo's counsel could have participated (as could have Parrillo), but voluntarily absented themselves, leading the trial court to conclude they had abandoned the proceedings. Parrillo received a fair trial. His nonparticipation attaches to his counsel and himself.

¶ 91         The trial court did not abuse its discretion in denying his motion for a mistrial.

¶ 92         Affirmed in part and reversed in part.